## WM. KING V. THE STATE.

**1.   Right of Severance of Parties Separately Indicted—Principals, Accomplices, etc.** ·

Art. 707 [669a], Code Crim. Proc., provides for a severance by defendants who are being prosecuted for an offense growing out of the same transaction by separate indictment, where the affidavit required is filed by either defendant. And Art. 91, of the Penal Code provides that: "Persons charged as principals, accomplices or accessories, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another; but, they may claim a severance, and if any one or more be acquitted they may testify in behalf of the others." Held: That where the demand for severance is properly made, the right is absolute and it is error to refuse it upon the ground that the parties are separately indicted, and that the one is indicted as a principal and the other as an accomplice. The statute applies expressly where some of the defendants are indicted as principals, and some as accomplices and some as accessories.

**2.   Same—Practice on Appeal.**

Where an application for a severance, to procure the testimony of another defendant, which was properly made, was overruled in the trial court, this court on appeal will not look to the statement of facts to determine whether the defendant has been injured in refusing him the right to have the other defendant first tried. This rule, which obtains in regard to continuances does not relate to the right to sever at the trial.

**3.   Abortion—Evidence of Prosecutrix—Opinion Evidence.**

On a trial for abortion, the State could prove by the prosecutrix, the operation, by means of which the abortion was produced; who performed it; how it affected her; how she suffered; what the symptoms were when the fœtus was delivered, but her testimony that appellant killed the child and came very near killing her, was opinion evidence and inadmissible.

**4.   Same—Evidence.**

Where an indictment for abortion alleged the same to have been committed by thrusting a metallic instrument into the womb of the prosecutrix, the State must prove the offense by the use of such means. And evidence is admissible to prove that such means were used on two or more occasions in efforts to produce said abortion. The efforts at different times were not separate and distinct offenses.

APPEAL from the Criminal District Court of Dallas.   Tried below before Hon. CHAS. F. CLINT.

This appeal is from a conviction for abortion, the punishment being assessed at five years' imprisonment in the penitentiary.

The charging part of the indictment is as follows, viz:   "That one Wm. King, on the 24th day of June, in the year of our Lord, one thousand eight hundred and ninety-four, with force and arms, in the county and State aforesaid, in and upon Bertie Barger, a woman, then and there pregnant, did make an assault and did then and there unlawfully, wilfully and designedly, with the consent of said Bertie Barger, thrust and force into the womb and private parts of the said Bertie Barger, a certain metallic instrument calculated to procure an abortion, and did then and thereby procure an abortion of the said Bertie Barger contrary," etc.   Defendant made a motion to quash the indictment which was overruled.

One T. B. Herring was indicted in another case, as an accomplice

for this same abortion. When appellant's case was called for trial, he made a motion and affidavit for a severance under the statute and asked that Herring be first tried, in order that he, appellant, might have the benefit of Herring's testimony, after his acquittal, which was material for his defense in this case. This application for severance was overruled by the court. Concisely stated, the evidence discloses these facts: That Bertie Barger, a young girl eighteen years old, was pregnant, that Tom. B. Herring had gotten her with child; that they both desired to have an abortion produced; that one Ranney Strange was a friend of the parties, willing to assist them in the matter. Herring and Strange and another party had procured medicine from a druggist for suppressed menstruation. Bertie Barger took this medicine and also calomel, which she had gotten her father to get for her, but the medicines failed to produce the desired effect. Ranney Strange, as the friend of the parties, then saw Dr. King, this appellant. Dr. King saw Herring and he, King, testified that he agreed to make an examination of the girl for $10. Strange testified that he afterwards handed King, for Herring, an envelope containing three promissory notes upon parties in the country. King appointed the time and place for the examination—at night and at a point near the bridge over Rowlett's creek, two or three miles from the home of the prosecutrix. King, the appellant, Bertie Barger, the prosecutrix, and Ranney Strange, the mutual friend, all testify that two "examinations," as King called them, were had. On Friday night, the 31st of May, Strange carried the prosecutrix in a buggy to the place of appointment on the prairie at Rowlett's creek. The prosecutrix testified, that on that occasion, appellant operated upon her to produce an abortion; that he took out a long, bright looking instrument that looked like it was made of steel, and said he was going to kill the child. That he inserted it into her womb. She says: "When he did that I had a kind of sick, fainty feeling, and he said for me to tell him whenever I had a crick in my back, so that he would know when he had gone far enough, and know when to stop," which she did. Strange's testimony as to this first meeting was: "We did meet out there. After we got out of the buggy, she walked off a little piece and laid down, he (King) walked out there and I went back and sat on the wheel of the buggy. I could see the parties. She laid down; he got down, too; I could not see what was done; I could hear them whispering; I guess they were there about fifteen minutes. Then Dr. King said everything was right, and we got in the buggy and went home."

The prosecutrix testified: "I got up off the robe because Dr. King told me he was through, and to get up; and told me that I would get sick, and said: 'You won't go over Sunday, anyway.' He said I would get sick about the child; he said he had killed it, and it would make me sick, and that if I got sick, he wanted me to send for Dr. King, and not send for any other doctor; and that he would come and see me and take the child away, and nobody would find it out. I then got up and went home with Ranney Strange in a buggy."

This first operation did not produce the abortion, and about four weeks. thereafter, through the kind offices of Ranney Strange, the meeting for a second operation was appointed. It was performed on the last Friday or Saturday night in June, about 10 o'clock p. m., in the cornfield of the father of the prosecutrix, and some one or two hundred yards from his house—Ranney Strange being again the only other party present, except the doctor and the prosecutrix. This operation was similar to the first one,. and by means of the same sort of an instrument. Before it was performed, the prosecutrix testified, that she had told the appellant that she had quickened with the child. She says, that the doctor worked on her about ten minutes this last time; that, after he got through, he said, 'Everything was all right and I would get sick in about two hours,' and when I got home and went to bed sure enough I was sick, and was sick ever since until it was born. That second operation was performed on Friday or Saturday night before the last Sunday in June, I believe, and the child was born on the first Sunday night in July. The child was born dead on the first Sunday night in July. He killed it and he came very near killing me."

Dr. Armstrong was the physician who attended on the prosecutrix when she was delivered of the child. He testified: "I think the age of the gestation of the child was four or four and a half months—maybe less and maybe more, but it was about that. Without having paid special attention to the child, I think it was five or six inches long—don't know what it weighed—but, expect probably half or three-quarters of a pound. Right on top of the child's head there was a little wound —a small wound—and when the child came I picked it up and looked at it and saw that wound, and I called Mr. Barger to me and asked him [here the question was omitted.] I never probed it to see whether it was a punctured or superficial wound, and I cannot say whether that wound was a punctured wound or superficial abrasion—it looked like a punctured wound from the abrasures." He further testified: "The commencement of the quickening period, as. it is called, varies right smartly. I think Playfair says, it is usually from sixteen to eighteen weeks, and sometimes sooner and sometimes later. I put it at about four months, but it can often be perceived sooner." Again he says: "I don't think it was necessary to make a wound on top of that child's head in order to produce an abortion. The abortion could have been produced by puncturing the sac. I think that puncture was. made by an instrument. I did not form any opinion as to the length of time the wound had been made."

Dr. W. E. King, the defendant, testified, in substance, that he made two examinations of the prosecutrix, at the instance and request of Tom B. Herring, to ascertain whether she was pregnant. That the second was made to ascertain the state to which the pregnancy had advanced, so that Herring might arrange his affairs. These examinations, according to his testimony, were made at the times and places testified to by the prosecutrix and Ranney Strange. But, he positively denied that

they were made for the purpose of producing an abortion; or that he used a metallic or any other instrument to effect that purpose. That they were digital examinations, and made solely to ascertain the fact of pregnancy in the first instance, and in the second, the state to which the pregnancy had advanced.

Testimony was adduced establishing the good reputation of the prosecutrix for truth and veracity. Defendant saved an exception to that portion of the testimony of the prosecutrix, in which she stated that appellant killed the child and came very near killing her.

When the State had offered its evidence in chief and rested, defendant moved to have the prosecution elect upon which of the two transactions a conviction would be claimed, the evidence showing that defendant had performed two operations for the same purpose, at intervals of about four weeks, at different places. This motion was overruled and an exception saved to the ruling.

Defendant's bill of exceptions with reference to the excluded testimony of Dr. Staples (which is mentioned in the opinion) is as follows: viz: "The defendant offered to prove by Dr. T. O. Staples that he was present at the Kilgore sale of stock, and that he there met the defendant; that this occurred in January, 1895, and that he had a conversation with him about this case, to which offered testimony the State objected, because the same was a self-serving declaration, which objection was by the court sustained, upon the ground stated in the objection, to which action of the court the defendant excepted, and said that he then expected to prove by said witness, that in said conversation, the defendant made to him the same statement regarding his connection with the alleged abortion upon said Bertie Barger, that the defendant made when a witness on the stand, in this case. This testimony was admissible because the State had theretofore during said trial, introduced as a witness one Tom Poindexter, who had testified in chief, that he met the defendant on his way to said Kilgore sale, and that the defendant had told him, in the course of conversation, that the horse he was riding was a horse he had gotten from Tom Herring for performing the abortion; that on cross-examination said Poindexter admitted that defendant had laughed when he made this remark, and made it in a jocular manner, wherefore defendant says that it was admissible and relevant for him to show that upon the same day in conversation with Dr. T. O. Staples, and subsequent to this conversation with said Poindexter, when talking of this charge, he made the same statement and explanation that he made upon the stand, denying his guilt, and in this connection defendant tendered Joe Estis and Jim Sachse, as witnesses, offering to prove by them, that he, defendant, had long before the conversation mentioned by Poindexter, and before his arrest in this case, and shortly after he was alleged to have been connected with this case, stated in conversation with said witnesses, the facts of his connection with said case, precisely the same as he testified to them on the trial of said case, but the court refused to permit said witnesses to detail

said evidence, thereupon defendant excepted and tenders this his bill of exceptions."

⌐ *Thomas & Turney* and *Miller & Williams*, for appellant.—The court erred in overruling defendant's application for a severence, and to have T. B. Herring, first tried, who was indicted as an accomplice in a separate indictment, for the same transaction. Code Crim. Proc., Art. 669a; Willeys v. State, 22 Tex. Crim. App., 413; Penal Code, Arts. 89, 91. The denial of a statutory right, whether it results injuriously to a defendant or not, is fundamental error. Logan et al v. United States, 144 U. S., 263. The court erred in overruling the motion to quash the indictment. (1) Because it charges that the defendant made an assault upon the prosecutrix with her consent in the same count. (2) Because it contains allegations repugnant to each other. (3) Because there can be no assault with the consent of the complainant or assaulted party. An assault implies force on one side and repulsion, or at least want of assent, upon the other. An assault, therefore, upon a consenting party would seem to be a legal absurdity. An assault upon a consenting female, old or young, is a contradiction in terms, a legal impossibility. Smith v. State, 12 Ohio, 466, S. C., 8 Amer. Decs., 355; State v. Pickett, 11 Nev., 255, S. C., 21 Amer. Reps., 754; People v. Bransby, 32 N. Y., 525; Wicher v. State, 2 Wash., 286; 3 Lawson's Crim. Defs., 307 and 243; Castillo v. State, 29 Tex. Crim. App., 127; Moore v. State, 20 Tex. Crim. App., 278; Nicholas v. State, 23 Tex. Crim. App., 317; Jenkins v. State, 34 Tex. Crim. Rep., 201.

The court erred in refusing to compel the State to elect upon which of the two transactions in evidence, it would rely for a conviction in this case, the prosecutrix having testified that defendant had performed two operations upon her by the same means, but at different places, at different intervals—about four weeks apart. Lunn v. State, 44 Texas, 85; Irish v. State, 34 Tex. Crim. Rep., 130; Elam v. State, 26 Ala., 48.

Appellant complains that the court erred in refusing to permit the defendant to prove by Dr. T. O. Staples, that on January 5th, 1895, on the day of the Kilgore sale of stock, at the sale, that the witness had a conversation with the defendant, at which time defendant told witness that he examined the prosecutrix for the purpose of determining whether she was pregnant first, and the second time to determine the stage of pregnancy, and that the horse he got from Herring he bought and paid for, and that he never agreed with said Herring to commit an abortion on the prosecutrix, and that he did not commit the abortion upon her. This testimony was rendered admissible by the State's witness, Tom Poindexter, who testifies that on the way to said sale, on the same day he met the defendant, and in a conversation, defendant in a jocular manner said the horse he was riding he had gotten from Tom Herring for performing that abortion. Defendant further proposed to prove by Joe Estis and Jim Sachse, shortly after the alleged abortion and before the defendant was arrested, that he made the same statement that he pro-

posed proving by the witness, Dr. T. O. Staples, and the same statement made by the defendant upon the stand. This he was denied the right to do. This evidence was clearly admissible under provisions of Art. 755, Code Crim. Proc.; Green v. State, 17 Tex. Crim. App., 405; Harrison v. State, 20 Tex. Crim. App., 387; Rainey v. State, Id., 455; Bonnard v. State, 25 Tex. Crim. App., 196; Craig v. State, 30 Tex. Crim. App., 612.

*J. P. Gillespie, H. P. Lawther,* and *Mann Trice,* Assistant Attorney General, for the State, filed an able and interesting brief in the case.

HENDERSON, JUDGE.—Appellant was convicted of abortion, and his punishment assessed at five years in the penitentiary, and he appeals. After the State had announced "ready for trial," and before the defendant had announced, he presented to the court the following motion:

"Now comes the defendant, William King, and, being duly sworn, on oath, shows to the court: That one T. B. Herring stands indicted in this court, in case No. 578, with an offense growing out of the same transaction which is the basis of the indictment herein against this defendant, and that the testimony of the said T. B. Herring is material for the defense of this affiant, and that this affiant verily believes there is not sufficient evidence against said T. B. Herring to secure his conviction. Wherefore defendant prays that said T. B. Herring be first placed upon trial, that this defendant may have the benefit of his testimony. That said case is No. 578 against T. B. Herring, and both growing out of the same transaction. [Signed] W. E. King.

"Sworn to and subscribed before me this March 27th, 1895. J. H. Stewart, Clerk, by I. A. Moore, Deputy.

"Filed March 27th, 1895. J. H. Stewart, Clerk, by I. A. Moore, Deputy."

The court overruled the motion, to which appellant excepted, and reserved his bill of exception. To the bill the learned judge appends the following explanation as a reason why he did not grant the motion:

"The defendant, T. B. Herring, was not indicted as a principal, but as an accomplice, to the abortion charged against William King, and with this qualification the above bill is signed; and the court's attention is also called to the evidence in the case as to the merits of this bill. [Signed]                "Chas. F. Clint, Judge," etc.

The last Act upon this subject is the Act of 1887, p. 33, Art. 669a, C. C. P., as follows: "Where two or more defendants are prosecuted for an offense growing out of the same transaction by separate indictment, either defendant may file his affidavit in writing that one or more parties are indicted for an offense growing out of the same transaction for which he is indicted; and that the evidence of such party or parties is material for the defense of the affiant, and that the affiant verily believes that there is not sufficient evidence against the party or parties whose evidence is desired, to secure his or their conviction, then such party or

parties for whose evidence said affidavit is made, shall be first tried, and in the event that two or more defendants make such an affidavit and cannot agree as to their order of trial, then the presiding judge shall direct the order in which the defendants shall be tried. Provided that the making of such affidavit does not, without other sufficient cause, operate as a continuance to either party." Under the law as it existed before this Act, the defendant would have a right to ask for a severance, if jointly indicted, or if indicted by separate bill, and have the further right, by the proper affidavit, to have his codefendant first tried; and for this purpose, whether jointly or separately indicted, they are codefendants. But the last Act settles this question beyond any controversy. Whether indicted as a principal or as an accomplice, if the accomplice is guilty of abortion, they would both be guilty of the same offense. This view of the question is settled by article 91 of the Penal Code, which reads: "Persons charged as principals, accomplices, or accessories, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another, but they may claim a severance, and if any one or more be acquitted, they may testify in behalf of the others." Here is a provision against their testimony before acquittal or nolle prosequi, and a provision that they may testify upon the severance; and this provision applies to all persons charged, whether as principals, accomplices, or accessories, and whether charged in the same indictment, or in separate bills. If they cannot testify for one another, it would not be just to refuse them the right to sever, and have the codefendant tried and acquitted in order to make him a witness. In Willeys v. State, 22 Tex. Crim. App., 408, the court below refused the severance, giving as a reason that he was not satisfied that it was a matter of absolute right that the defendants had a right to sever. In reply to this, Presiding Judge White says, "that, in our opinion, there can be no question as to the intention of the legislature to confer upon such defendants the right to demand a severance, and where they come within the terms of the statute, and demand such right, it is manifest error to refuse or deprive them of it." That case was reversed and remanded for that error, and perhaps others. It is not suggested in the explanation of the learned judge, who tried this case, that the granting of the motion would operate as a continuance to either party. We presume that, if this had been the case, it would have been so stated. The only reasons given are that Herring was not indicted as a principal, and that we we should look to the facts of the case. The statute expressly provides for cases in which some are indicted as principals, some as accomplices, and some as accessories. They all stand on the same footing, so far as this right is concerned. Being an absolute right, when the statute is complied with by the accused we will not look to the statement of facts, or anywhere else, to determine whether the testimony of Herring, if he had been acquitted, would have been material to the defendant. This is not required by the law. Counsel for the State, in their brief, seriously

contend that this matter should be treated as an application to continue the case, and that, although the court may have erred in overruling the motion, yet that we can look to the statement of facts to ascertain whether injury has been done the appellant; contending that Herring, if acquitted and presented as a witness, would not have testified to any material facts for the defense. For a number of years, in this State, under the law in reference to continuances, there was no discretion in the court, but the continuance was a matter of right. This law has been expressly changed in this respect. It now provides that the ruling upon the motion to continue is within the discretion of the court, and that it can be overruled, though the application complies with the statute, and, if convicted, the defendant would have a right to bring the matter before the court again on motion for a new trial. Then, in passing upon whether the court erred in overruling the motion, two matters must be looked to. Diligence being proper, was the testimony of the absent witness material? And was it probably true? If it was, a new trial should be granted. There are no such provisions relating to the right to sever. The statutes stand just as the law stood in regard to continuances for a long time—beyond the discretion of the court. But suppose we should adopt the view in this case suggested by the State,—look to the statement of facts to determine whether the appellant has been injured in refusing him the right to have Herring tried first, etc. By an inspection of this record, it will be found that Herring's testimony would be very material and beneficial to the defendant on several points. We have not the time to quote and insert all of the points upon which he could testify to facts material to the defendant. There was a motion, also, to continue the case for the absence of other witnesses. This matter will not arise again. The prosecutrix testified, over the objection of the defendant, that appellant killed the child, and came very near killing her. The fœtus was not delivered until eight or ten days after the last operation. She could not positively know that appellant killed the child, or came very near killing her. This was her opinion. The State had a right to prove by her the operation, how it affected her, who performed it, how she suffered, what the symptoms were, when the fœtus was delivered, and all about that matter, but had no right to introduce in evidence her opinion as above stated. We are of opinion that the statement to Dr. Staples by appellant, and which was offered in evidence by the appellant, and rejected and excluded by the court, was not admissible, under the circumstances of this case.

The indictment elects a certain act or method by which the abortion was procured, viz: that the appellant did "unlawfully and designedly thrust and force into the womb and private parts of Bertie Barger, a certain metallic instrument, calculated to produce abortion, and did then and there and thereby procure an abortion on the said Bertie Barger." The State introduced in evidence two meetings between appellant and Bertie Barger at secluded places, and that metallic instruments were introduced on both occasions. Counsel for appellant contended that the

State should have been forced to elect upon which transaction to prosecute. We think not. The offense charged was abortion. The means used was set out as above stated, and the State must prove that the abortion was procured by this means. This is not a case in which the two transactions are represented as separate and distinct offenses committed, but two efforts to procure the abortion; and whether they have been made by the same method or means would have been admissible— the one to support that which is alleged in the indictment—with this qualifiction; that the means alleged must be shown to have produced the abortion. This disposes of all of the assignments necessary to be discussed in this case. For the errors pointed out the judgment is reversed, and the cause remanded.

<em>Reversed and Remanded.</em>

DAVIDSON, Judge, absent.

*No. 850.    Decided February 26th, 1896.*

