## B. K. Bruce v. The State.

No. 3378.    Decided January 13, 1915.

Rehearing denied February 10, 1915.

### 1.—Robbery—Certiorari—Practice on Appeal.

Where appellant accompanied his motion for a writ of certiorari with a certified copy of the amended motion for new trial showing that the same was omitted inadvertently from the transcript, this court will pass upon same without issuing the writ of certiorari.

### 2.—Same—Severance—Other Trial Pending.

Where defendant and five others were indicted in separate indictments for robbery of the same party and were granted a severance, and the trial of one of the defendants was pending when defendant's case was called, there was no error in overruling a motion for postponement until the jury in the other case should return a verdict. Following Krebs v. State, 8 Texas Crim. App., 1, and other cases.

### 3.—Same—Acquittal of Co-defendant—Immateriality of Testimony.

While there was no error in the court's refusal to postpone defendant's case until the jury had returned a verdict in a co-defendant's case, yet as said co-defendant was later acquitted, the defendant was entitled to the testimony of the co-defendant, however, it being immaterial to his defense, there was no error on this ground. Davidson, Judge, dissenting.

### 4.—Same—Jury and Jury Law—Bill of Exceptions—Qualifications.

Under article 695, Penal Code, there was no error in the court's action in having the sheriff to summon talesmen in the absence of regular jurors for the week; besides, defendant's bill of exceptions, as accepted by him and qualified by the court, presented no error. Following Blain v. State, 34 Texas Crim. Rep., 448, and other cases. Davidson, Judge, dissenting.

### 5.—Same—Evidence—Circumstances.

Where, upon trial of robbery, the defendant introduced testimony attacking the reputation of the prosecuting witness for truth and veracity, there was no error in admitting in evidence certain whisky bottles which tended to corroborate the evidence of the prosecuting witness; said testimony being part of one and the same transaction.

### 6.—Same—Evidence—Res Gestae.

Upon trial of robbery, there was no error in admitting testimony of the declarations of the party alleged to have been robbed to a State's witness, the same being res gestae of the transaction.

Appeal from the District Court of Taylor. Tried below before the Hon. Thomas L. Blanton.

Appeal from a conviction of robbery; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Ben L. Cox*, for appellant.—On question of postponement and materiality of testimony: Dodson v. State, 24 S. W. Rep., 899; King v. State, 34 S. W. Rep., 282; Krebs v. State, 3 Texas Crim. App., 348; id., 8 Texas Crim. App., 1.

On question of jury: White v. State, 78 S. W. Rep., 1066; Bickham v. State, 51 Texas Crim. Rep., 150, 101 S. W. Rep., 210.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of robbery, and his punishment assessed at five years confinement in the State penitentiary.

Appellant files a motion praying for a writ of certiorari to perfect the record, claiming that his amended motion for a new trial had been omitted from the transcript. As he accompanies his motion with a certified copy of the amended motion for a new trial, we will consider it as a part of the record, and pass thereon, without the necessity of having it brought up by certiorari.

The first ground complains that the court erred in not postponing this trial until the jury in the Dolph Cass case had arrived at a verdict. It appears that appellant and some five others were indicted in separate indictments charged with robbing one Jim Brown. They appeared and by proper affidavit asked that Barney Cass be first tried, Dolph Cass second, appellant third, and then the others in the order named. The court granted the motion, and first tried Barney Cass, and he was acquitted. Dolph Cass was then tried, and the cause submitted to the jury on the 17th day of September. The court waited until next morning, the 18th, for the jury to return a verdict, and they not having done so, he then called this case for trial. Appellant asked that the case be postponed until the jury in the Dolph Cass case should return a verdict. This motion was by the court overruled, to which action of the court appellant took a bill of exceptions. Appellant cites a number of authorities, holding that a right to severance in this State is mandatory. This is unquestionably the law, and the court granted the severance and placed the defendants on trial in the order requested, but we do not think the court was under obligation to wait an unreasonable time for the jury to return a verdict in the cases first tried. It has been frequently held that where the court grants a severance as requested, and places the defendants on trial in the order requested, he does not have to await the final determination of the case first tried before he proceeds with the trial of the others. (Myers v. State, 7 Texas Crim. App., 640; Krebs v. State, 8 Texas Crim. App., 1.) It further appears that after the trial of this case and verdict returned, the jury in the Dolph Cass case having failed to arrive at a verdict, it was discharged, and Dolph Cass again placed on trial on September 21st; he was acquitted on the second trial. While there was no error in the court refusing to postpone this case until the jury had returned a verdict in the Dolph Cass case, yet as he was subsequently acquitted during the same term, his testimony would be in the nature of newly discovered testimony, as he was not a competent witness at the time of the trial, and if his testimony was of a nature to be beneficial to the defense of defendant, he would be entitled to a new trial. No affidavit of Dolph Cass is in the record as to what he would testify in this case, the only thing being in the record is, the court ordered his testimony on his first trial attached to the bill of exceptions to his overruling the motion to postpone this

case. The court saying: "The court refuses to delay this trial as requested, by counsel, for the reason that in the case, wherein the jury is now out said Dolph Cass testified fully and the court here now makes all of said testimony a part hereof; which testimony of said Dolph Cass shows that he, the said Dolph Cass, was not present at the time the witness Jim Brown was assaulted, if he was assaulted, and could not have known of any facts that took place at that time if there was such an assault, and that said testimony could not in any way benefit the defendant, B. K. Bruce, on this trial, reference being made to all of said testimony of record in said Dolph Cass case, which is made a part hereof." We have read this testimony, and we find that Dolph Cass testified, after reciting some incidents: "When that occurred I said something to Bonnie. I told Bonnie, less go. I says I don't want to fool with that old crazy nigger, and I commenced to walk on off, because I have been here about fourteen years and never paid a fine, and never been before no court, and I didn't want to be arrested, and I told Bonnie, less go. I says, don't fool with that old crazy nigger, and after I got on out, and I says, you better come on, and he came on, and we left from there and came on down by Joe Davis' around by the compress and come on straight up this street and went to the Metropolitan Cafe and got two sandwiches and two cups of coffee from Mr. Keegan, the night waiter, and eat them. I got them on a credit. And we were over there about, I don't know, we stayed there anyhow until about 6 o'clock and I came on back down here to work at the shop. I left Gus Wells down there and B. K. Bruce and John Crawford and that fellow Brown and Jim Wimms. There were five of them. I did not go back down there any more. I came from the Metropolitan Cafe to the barber shop, where I was at work." It will be seen that Dolph Cass testified he had left before the robbery is said to have occurred, and did not go back, and he places appellant at the place where the State's evidence showed the robbery did occur. Under such circumstances appellant is not entitled to a new trial to secure his testimony.

In the next bill appellant complains that he was, without his consent, forced to go to trial before a jury summoned by the sheriff and not the jury drawn for the week. The bill discloses that all the jurymen drawn for the week were used in the two companion cases first tried except five, and these five had been excused by the court. The court, in approving the bill, says that during the first trial he had requested all jurymen not empaneled on that case to remain out of the courtroom, and they had done so, but during the second trial the five not accepted on that jury remained in the courtroom and heard the evidence and were disqualified, and for this reason had excused them. Appellant accepts this bill as thus qualified and is bound by the qualification. (Hardy v. State, 31 Texas Crim. Rep., 289; Levine v. State, 35 Texas Crim. Rep., 647; Blain v. State, 34 Texas Crim. Rep., 448.) As qualified by the court the bill presents no error, for article 695 of the Penal Code authorizes and requires the court to have the sheriff to summon a jury when

from any cause there are no regular jurors for the week from which to select a jury.

In the third bill it is contended that the court erred in permitting certain whisky bottles to be introduced in evidence. The State's prosecuting witness testified to having voluntarily furnished the money with which to procure the first bottle of whisky, and that he was compelled by defendant and the others to furnish the money to buy the remaining bottles of whisky. The whisky bottles were picked up at the place where the witnesses agree the game of craps took place that night. The appellant introduces witnesses to prove that the reputation of the prosecuting witness for truth and veracity was bad. They also denied that any whisky was purchased that night, but said that drinks were taken out of a bottle that the prosecuting witness had with him. Taking the labels on the bottles and other circumstances in the case, these bottles tended to corroborate the evidence of the prosecuting witness, and his reputation for truth and veracity having been assailed, there was no error in admitting the testimony, for the evidence in regard to the whisky was so entwined with the robbery transaction as to make it all a part of one transaction.

The only other bill of exceptions in the record complains of the action of the court in admitting the testimony of the witness Majors. This witness testified: "I remember the occasion along about the middle of August of this disturbance down here in nigger town. I was at the light plant that morning. I was not night watchman at the ice plant. I was fireman. I was working there at night. I was there about 4:30 or 5 o'clock in the morning. I saw this one-armed nigger, Jim Brown, that morning. He came to me some'rs between 4:30 and 5 o'clock; some'rs right along about that time. He came in the plant walking pretty fast. From his manner and conduct there, he was pretty badly excited and I think he was drinking some from his breath. He had a wound right here on his thigh somewhere; I don't know just how much. There was a little bit of fresh blood on it. He made a statement there to me. He said that he had been knocked down and stabbed right there, and he stopped right there close to the door by me, and I examined him and he pulled down his pants, and there was a little place—fresh blood right along here, somewhere on his thigh. He said they had knocked him down and robbed him." He further testified that the negro said he was afraid to go to the police station by himself and asked him to go with him. The court, in approving the bill, says: "Same was clearly res gestae, the evidence being uncontroverted that the scene of the alleged assault was only about a block from the ice plant where said Majors was working; that said witness Brown ran from the scene of said alleged assault hurriedly to said ice plant, and in an excited, scared condition, related to Majors what had taken place; that he was still scared and excited when said Majors left him, on his way to the police station." Appellant contends that we should not consider this qualification, he contending that there is nothing in the evidence to show that

the ice plant was only one block away. Of course, as qualified, the evidence would be admissible, but if we should ignore the qualification the record would show it to be res gestae of the transaction. The assaulted party testified he went direct from the place of the assault to the plant and told Majors, and asked him to go to the police station with him, and Majors' testimony shows that the negro was excited and bleeding from his wound in the thigh. The entire record discloses that it could have been but a few minutes' time from the time of the alleged assault until he appeared at the light plant and had the conversation with Majors, and the court did not err in holding the testimony res gestae of the transaction.

There are no other grounds in the amended motion other than as presented in these four bills of exception, and as they nor either of them present error, the judgment is affirmed.

*Affirmed.*

[Rehearing denied February 10, 1915.—Reporter.]

DAVIDSON, JUDGE (dissenting).—When the case was called for trial appellant filed an affidavit for a severance. It was agreed among the parties and recognized by the court that Cass should be tried first. He was placed upon trial, and the jury retired. The case against appellant was called over his protest. He asked the court to postpone his trial until the jury in the Cass case had returned a verdict. There was no continuance sought and there was none necessary, and the request would not have continued the case. The court overruled the motion and put appellant upon trial for robbery. This was error which ought to have reversed this judgment. For collation of authorities see Branch's Crim. Law, sec. 742. The court says, in substance, the reason he did this was that he heard Cass testify in his trial and he would not have testified as appellant insisted he would testify. Cass testified on the trial that he did not participate in the robbery. That much at least is shown by the court by appending Cass' testimony to the bill. The theory of the State was that appellant and several others, among whom was Cass, participated in the robbery, and it was done in pursuance of a conspiracy and acting together. If Cass had testified that he did not participate in the robbery and was not present and had nothing to do with it, then that part of the State's case, if Cass was telling the truth, would necessarily fail. This would have within itself been important testimony to the defendant, but it is asserted by appellant that he would testify favorably to defendant, that he, defendant, did not participate in it. I am not stating the details but the substance. Mr. Branch lays this rule down tersely and correctly: "If request for severance, properly made, is overruled, the statement of facts will not be looked to in passing upon the question as to whether the court erred. King v. State, 35 Texas Crim. Rep., 472; Anderson v. State, 56 Texas Crim. Rep., 367." He also says the "defendant is entitled to a severance as an absolute right, when statute is complied with," citing King v. State, supra; Dodson v. State, 32 Texas Crim. Rep., 529; Willey v. State, 22

Texas Crim. App., 408; Shaw v. State, 39 Texas Crim. Rep., 161. The record further shows that Cass was acquitted, but on a subsequent trial, and in fact it seems from the record all the defendants were acquitted except appellant. Because the trial court comes to the conclusion that the witness may not swear as the defendant thinks he will, or to facts which in the judgment of the court would not be sufficient to meet the State's case, does not authorize him to refuse the severance and force the defendant upon his trial in the face of a request. The jury is the body that tries the defendant on the facts. The court is not authorized to take away these mooted issues from the jury and decide them himself, and sustain his action in refusing the severance. He may not believe the witness; he may not believe the cogency of the testimony, yet if the facts are material and the jury does believe them, then it is error to refuse the severance, or having granted the severance, then to change it without the consent of the defendant as to the order of trial. Looking at this case from either standpoint, that set out by the court, towit: that Cass testified he did not participate in the robbery; or from the standpoint of the defendant, that Cass would testify that he, defendant, did not participate in the robbery, either view of the testimony would be beneficial to the defendant. Where the State relies upon a conspiracy or agreement to do a thing between certain parties, and one of those parties testified this was not true and he did not participate in it and had nothing to do with it, it is a direct·and serious attack upon the State's theory of conspiracy. Of course, if Cass would testify, which is asserted by appellant in his bill of exceptions, that appellant did not participate in the robbery and had no connection with it, it would be of the utmost importance. So whether we look at it from the standpoint of the court's statement or the standpoint of the defendant, this evidence was material. Any fact or circumstance which disproves or tends to disprove the State's theory or attacks it from any material standpoint, is essentially a material fact; and it is also shown that the other defendants were acquitted. If all the defendants were acquitted except the defendant, and the State's case was conspiracy, and this evidence was introduced to show that those witnesses may have been very important to the defendant, because if none of them engaged in the conspiracy for which the State contended, then the State's whole case was attacked, and from a most serious standpoint.

There is another question. When defendant's case was called for trial, and the court overruled his motion to postpone to await the verdict in the Cass case, it seems there were five jurors of the regular panel who were not sitting in the Cass case. The court of his own motion excused these jurors from attendance on this case and over the objection of the defendant. He says he did so because the jurors had heard the testimony in the Cass case. That was his statement. It seems, however, there was other testimony to the effect that they were not in the courthouse, therefore did not hear it. If they had heard the testimony, this may or may not have disqualified them. If from hearing the evidence

in the Cass case they had made up their minds, or had reached the conclusion that appellant was guilty, then they could have been challenged for cause by the defendant. If they had reached the conclusion that he was not guilty, then they would be subject to challenge by the State. What their conclusion about it, if they had any, is not shown. The court simply excused them peremptorily of his own motion from attendance on the court, or rather as jurors in the case, over the objection of defendant. I do not understand that the court had this authority. They were regular jurors, and if the defendant had shown they were disqualified in any way, then the court could have acted upon it, but the court not only did this under the circumstances, but he immediately ordered the sheriff to bring in twenty-two jurors from whom to select a jury to try the defendant. What conclusion these five jurors excused by the court of his own volition, or on his own motion, had reached is not shown, if they had any. It may have been favorable to the defendant inasmuch as the jurors in the previous cases had acquitted the other defendants. The judge assigns as the reason for excusing them from sitting on the case, that they had heard the testimony in the other case, but this seems to be a controverted fact; and it may be said under the authority of Leonard v. State, 53 Texas Crim. Rep., 187, that this qualification of the judge ought not to be considered. This was an independent fact which if he desired to testify about it he should have taken the witness stand. It is not one of those matters that he is authorized to insert in his qualification to the bill. I do not care to amplify these matters further.

Without going into the other questions suggested for reversal, I have thought it expedient that I should at least say this much in protest of the affirmance of this judgment.