## AGAPITO RUEDA v. THE STATE.

### No. 9344. Delivered October 7, 1925.

### Rehearing Denied, November 11, 1925.

**1.—Murder—Severance—Order of Trial—Agreed to by Defendant—No Error.**

Where on a trial for murder it is shown that while appellant had entered into a written agreement with the codefendant, that said codefendant should be first tried, but when the case was called for trial, the defendant in person agreed that he be first placed on trial, which was accordingly done, he will not be heard to complain of the state's failure to first try his codefendant, notwithstanding the written agreement. His consent that he be first tried, was binding on him.

**2.—Same—Evidence—No Error Presented.**

Where on a trial of murder alleged to have been committed in the perpetration of robbery, no error was committed by the state in bringing into the court room, and placing on a table, in view of the jury the pistols, clothes, bullets and cartridges used in the robbery and murder, all of said articles during the progress of the trial having been identified, and introduced in evidence.

**3.—Same—Evidence—Statements of Accused—Held, Properly Admitted.**

Where testimony of a woman witness was admitted to the effect that shortly after the attempted hold up, appellant was brought to her house, wounded in the legs, and that he told witness that he, and her brother were in the holdup and that he was wounded in the fight, the identification by witness of appellant being sufficiently clear to warrant the admission of this testimony, no error is shown.

**4.—Same—Evidence—Properly Received.**

Where the state had shown that appellant and one Carrasco were both present and were both wounded at the scene of the attempted holdup, it was not error to permit an officer to testify that he had found said Carrasco, near the same place that appellant was found, that said Carrasco was wounded in the leg, and that he found a 45 caliber automatic cartridge in his pocket, said testimony being admissible to show the movements of the parties participating in the holdup, and same was not within the rule prohibiting proof of acts and conduct of co-conspirators, after the consummation of the conspiracy. Following Pierson v. State, 18 Tex. Crim. App. 561, Williams v. State, 88 Tex. Crim. App., 96.

**5.—Same—Statements of Counsel—In Hearing of Jury—Held not Error.**

Where in a discussion of the admissibility of evidence, in open court, and in the hearing of the jury, the district attorney said to the court "If we could show these two parties were acting together which we have, we could show the flight of either party afterwards." It is hardly possible that the jury could have appropriated such a statement by counsel, as evidence against appellant, and no error is shown.

**6.—Same—Evidence—Properly Admitted.**

It having been shown that appellant, and one Carrasco, and several others acted together in the attempted holdup and killing, it was not error

to permit a witness to testify to having seen Carrasco cash a check in the bank, where the hold up occurred, shortly prior thereto, no injury to appellant in its admission being perceived.

### 7.—Same—Confession of Defendant—Made Through Interpreter—Properly Received.

Where a confession in writing made by appellant through an interpreter was introduced, and it was shown that said interpreter was not sworn before interpreting the confession, no error is shown. Art. 810 of C. C. P. does not require that the interpreter be sworn, nor that the confession be sworn to. The interpreter having testified on the trial that the confession was properly interpreted from Spanish into English by him, and when transcribed, was read and explained to appellant by him, and that appellant then voluntarily signed same we believe that said confession was properly admitted.

### 8.—Same—Cross-Examination—Practice in Trial Court.

Where the court refused to permit appellant to examine the interpreter in the absence of the jury touching the confession of appellant, and counsel, for appellant then cross-examines such interpreter and proves statements made by appellant to said interpreter not contained in the written confession, he is bound by his cross-examination of the witness, and will not be heard to complain of the evidence elicited by him on such cross-examination.

### 9.—Same—Same—Evidence—Rule Stated.

It is well settled that where one party elicits testimony from a witness, that the opposite party is privileged to cross-examine upon the matter enquired of. Appellant having disclosed by the witness Aldreta, the interpreter, that appellant had stated to him that he had been convicted of a felony in New Mexico, he will not be heard to complain of the cross-examination of said witness on the same subject-matter, by the state, even tho the testimony elicited by counsel for appellant would not have been admissible, if offered by the State.

### 10.—Same—Argument of Counsel—Not Improper.

Where the assistant district attorney in his argument said "What does the defendant say about this" and immediately read from the confession of the defendant in answer to his own query, we cannot discover in such argument any possible reference to the defendant's failure to testify, and no error is shown.

### 11.—Same—Argument of Counsel—Not Improper.

Counsel for the state has the right and it is his duty to discuss the evidence, and to draw all legitimate deductions from and to illustrate same, without indulging in vituperations or abuse of the appellant, and it was perfectly legitimate and proper for the district attorney in his argument to refer to the appellant, and to say, "If you didn't want all this artillery presented here before the jury, why did you and all those other bandits carry it up there." Such statement could have no possible reference to counsel for appellant.

### 12.—Same—Evidence—Held Sufficient.

Appellant contends that the evidence in this case is not sufficient to support the verdict. To this we cannot agree. Two men were killed in an attempt to rob parties with a railroad pay roll, by five bandits. Two of these were wounded in the legs during the shooting. Shortly thereafter appellant was found at the home of the sister of one of those identified. He was wounded in the leg. He confessed to this woman that he had participated in the holdup. He afterward made a complete confession in writing to the dis-

trict attorney. Other circumstances of a convincing character were proven. There was no error of a reversible character committed on his trial, and though the extreme penalty of death was inflicted by the jury the cause must be affirmed.

ON REHEARING.

13.—Same—Severance—How Claimed—No Error Presented.

On rehearing appellant insists that his co-defendant, Carrasco, should have been first placed upon trial. No formal affidavit was made by him, in compliance with the statute that his co-defendant be first placed on trial. It appears that he and Carrasco had entered into a written agreement that Carrasco was to be tried first, which was presented as a request for severance by appellant. When asked in person by the court if he desired to be first tried, he expressed indifference regarding the matter, but afterward told the court to try Carrasco first. Under these conditions we cannot agree that the court exceeded his discretion in placing appellant first upon trial, and no injury is shown to him by such action.

14.—Same—Confession of Defendant—Practice in Trial Court—Rule Stated.

Where a request is made to withdraw the jury where a confession is offered, to permit counsel to examine witnesses as to the *voluntary character* of the confession, such request is properly refused. The voluntary character of a confession is, under our practice, a question for the jury to pass upon, and evidence attacking the confession in this respect should be heard by the jury and then under appropriate instructions, they are to say whether or not the confession was voluntary. Distinguishing Bingham v. State, 262 S. W. 747.

15.—Same—Continued.

However, where the issue is whether or not the accused was *under arrest*, when the confession is made, another rule applies. When this issue is presented, it is error for the court to refuse to withdraw the jury, and allow the accused to show by proof that in fact he was under arrest when such confession was made. Following Bingham v. State, 262 S. W. 747.

Appeal from the District Court of El Paso county. Tried below before the Hon. W. D. Howe, Judge.

Appeal from a conviction of murder; penalty assessed at death.

The opinion states the case.

*Robert E. Cunningham,* and *W. Joe Bryan,* for appellant.

*Tom Garrard,* State's Attorney, and *Grover C. Morris,* Assistant State's Attorney, for the State.

BAKER, JUDGE.—The appellant, Manuel Villareal, Jose Carrasco and Alejo Menjarez were indicted jointly in the district court of El Paso county for murdering William Meers by shooting him with a pistol; appellant was convicted and his punishment assessed at death.

The record in this case briefly stated, shows the facts to be that the deceased, Meers, W. L. Laird, and C. A. Bitticks and Geo. H. Reed, started from the American Trust and Savings Bank in El Paso to

near what is known as the Van Noy building with about fifteen thousand dollars with which to pay off the checks of G. H. & S. A., railroad hands, as had been the custom of said bank for many months prior thereto. The evidence of the State as shown by the record is that the defendant and five other parties, one of whom was named Carrasco formed a conspiracy to take the money in question and rob the parties thereof. In the testimony there is some conflict as to how many parties were in the bandit bunch, as some of the testimony tends to show that there were four and some six. Carrasco had formerly worked for the railroad company and knew of the custom as to paying the railroad hands in the manner above mentioned by the bank. The parties with the money went from the bank to the Van Noy building in an automobile and when they had left the automobile and started into said building with the money, one of the parties in the holdup, denominated in the record, as a bandit, threw his pistol down on Laird, the man with the money, and it was fired and immediately the fight opened up between the parties in the car and the said named bandits, in which Meers and a Mexican by the name of Lopez, were killed, Bittick and Reed wounded and the appellant and Carrasco were wounded by being shot in their legs. The money was recovered at or near the place where it was dropped and the alleged bandits fled from the scene of action. This is a sufficient rendition of the facts as stated in the record as a preface for the discussion of the points in question.

In bill of exception No. 1, complaint is made to the ruling of the court in not trying the appellant first on a motion to sever, instead of his codefendant Carrasco; the bill shows that the appellant and his attorneys and the attorneys for said Carrasco had agreed in writing that appellant be tried first. When the cases were called for trial, it appears that said motion for severance was presented and the Court stated he had been informed by the district attorney that appellant desired to be tried after Carrasco instead of being tried first and inquired of the defendant if such was his desire and if it were that he would pass his case until after the trial of Carrasco to all of which the appellant agreed and said try Carrasco first then. The contention of appellant in this instance is that the court exceeded his authority under Art. 728, C. C. P., in not obeying the written agreement and in not permitting the appellant to be tried first. We are unable to agree with this contention and believe that if appellant, agreed to it as the bill shows, to have Carrasco tried first, regardless of said written agreement, that no one could complain at the action of the court unless it be Carrasco. In any event we fail to see any injury done to the defendant in this instance.

In bill No. 3. complaint is made to the action of the court in permitting the State to place pistols, clothes, bullets, and cartridges on a table in view of the jury that were contended by the State to have

been used by the defendants in the attempted holdup and attempted robbery before they had been identified and introduced in evidence. The qualification made by the court to this bill shows that each and all of the above said articles, were dug up and introduced in evidence. We fail to see any error in the action of the court in this instance, because if said articles were in view of the jury and afterwards introduced in evidence and exhibited to them, it certainly could not be harmful to the defendant, as the jury had full view of all of said articles complained of, and we are unable to conceive how there could be any difference in bringing them in one at the time and introducing them in evidence, or in bringing them all in at once and afterwards admitting them. The effect appears to us to be the same and we overrule this contention.

In bill No. 4, complaint is made to the action of the court in permitting the State to prove by the witness, Maria Jesus Garcia, that on the day of the holdup and alleged attempted robbery, that she heard about the attempted holdup and the trouble and on said day before she heard of same, that Manuel Villareal, her brother and Alejo Minjarez, brought a wounded man to her house and that she learned his name to be Agapito Rueda, the man that the officers afterwards came and arrested and she noticed blood on his leg and that the said defendant told her that he was in the holdup and he was one with her brother and that he was in the holdup with Manuel and she further testified to having turned over his hat and clothing to the officers. The objection being to said testimony that it was prejudicial to the rights of the defendant and not legal evidence against him and was permitting the State to give hearsay evidence of the identity of the defendant. It appears from the record that the holdup took place just before noon and shortly after on the same day the above-named parties carried the defendant into the house of said witness in his crippled condition and left him there where he was arrested the following day by the officers. We are of the opinion that the court committed no error in admitting this testimony. That the State's witnesses identified the defendant as being one of the parties in the holdup and the State's testimony tended to show that the State's witness Bittick in shooting at the alleged bandits appeared to have crippled a couple of them in their legs, from their movements, and the admission of the defendant to said witness of his connection and participation in the attempted holdup made the testimony admissible beyond question in our opinion and in view of the testimony in this case when the codefendant, Carrasco, was arrested in the vicinity of the home of the State's witness where the defendant was left, and that he was shot in the legs, and the further testimony of the State's witness showing that there was a Dodge car in that vicinity with bullet holes through it and blood in it and that the car that the bandits were using was a Dodge car and was seen to leave the place of the

holdup with three or four of the participants of the attempted hold-up in it moving at a rapid rate and also four parties about that time were seen driving fast in a car going in the direction of where said parties were afterwards arrested and where said car was found, dressed in a similar manner to that in which the alleged bandits were dressed, in our opinion makes said testimony clearly admissible and not hearsay.

There is objection urged in bill of exception No. 5, to the testimony of the State's witness, Stowe, to the effect that he saw the codefendant, Carrasco, down at a certain house, No. 607½, crippled in his right leg, to the effect that the leg was shattered and that they took him to the doctor and had his leg dressed and sent him to the hospital and he saw the defendant the next day and the Dodge automobile in question, the house of Garcia in the vicinity of where he had seen Carrasco and to the effect that he found him with a shattered leg with a bullet above the knee which he had the doctor to dress and sent him to the hospital; and further testified to having taken out of the pocket of said Carrasco a forty-five automatic, cartridge to all of which said testimony appellant's counsel objected to the matters as effecting the arrest of the codefendant Carrasco because he had been previously tried and the death penalty assessed and which would lead the jury to believe that the defendant was connected with said Carrasco, in the commission of said alleged offense and that same would serve to identify the defendant as acting with said Carrasco. We think the court committed no error in admitting this testimony because the State's testimony clearly showed that the appellant and said Carrasco were on the scene of the alleged holdup and the place of the homicide, participating jointly therein, and attempting to effect the alleged robbery, and the confession of said Carrasco as shown by the record was introduced in this case by the appellant's counsel wherein the said Carrasco admitted and confessed to being in the alleged holdup and participating therein. This being the case there could be no possible error committed, besides we clearly think this testimony was admissible in showing circumstances connecting the defendant and each of them with the commission of the offense charged against them. In objecting to this testimony, and similar testimony herein discussed, the appellant urges the objection that if any conspiracy was ever entered into, in this case, said matters complained of took place subsequent to the alleged commission of the offense. In the case of Arlington v. State, 263 S. W. 593, this court held that as a general rule the acts and declarations of a co-conspirator occurring subsequent to the commission of the offense should not be received against the accused on trial, but an exception to that rule obtains where it is shown "that such conspirator is found in possession of the fruits of the crime or the weapons or instruments with which it is committed" citing Branch's P. C., Sec. 695. And in said

case it is further stated "the possession of the weapons or instruments used in committing the robbery or any of the property obtained by Whalen would tend to incriminate him and it appearing from the direct evidence that appellant acted with Whalen, the circumstances mentioned as corroborative of the direct evidence pointing to the guilt of the appellant" (citing Pierson v. State, 18 Tex. App. 561; Williams v. State, 88 Tex. Crim. Rep. 96) ; and further stated "the evidence introduced showing the association of the appellant and Whalen both before and after the offense was properly received on the issue of the appellant's identity." This case, together with the citation in Branch's P. C., Sec. 695, wherein there are many authorities cited, conclusively holds against the contention of the appellant, wherein he object to the finding of the cartridges in the possession of Carrasco and in describing the character of wounds appellant and Carrasco had received and the condition of the appellant and their clothing. What we have said in this connection also applies to Bills 7, 8, 9 and 11.

In Bill No. 6, complaint is made to the action of the district attorney in stating to the court in the presence and hearing of he jury, "If we could show these two parties were acting together, which we have, we could show the flight of either party afterwards." It appears from the bill that this argument took place when the State's witness, Stowe, was upon the stand testifying, to which the appellant objected on the grounds that it was inflammatory and improper and would tend to prejudice the rights of the defendant. The confession introduced by appellant, made by his codefendant, Carrasco, shows itself that the parties named by him, including himself, but not appellant, left the scene of the alleged holdup in the car rapidly; and the testimony of the State's witness shows that said car was driven away rapidly and was shortly afterwards seen with four Mexicans in it driving fast, which suited the description of the parties described at the scene of the alleged holdup, which we take it would show that they had taken flight from the scene of the trouble, and that appellant participated in the holdup and left with the others under such circumstances; said bill fails to show any error in our judgment from the remarks of said district attorney. These remarks were made to the court, however, in arguing the question and not to the jury and under such circumstances, even if the evidence didn't warrant the statement, it can hardly be supposed that the jury would take arguments and statements to the court, under such circumstances, as evidence in the case.

Bill of exception No. 10, complains of the action of the court in permitting the State's witness, Quevo, to testify to having seen Carrasco prior to the date of the alleged holdup, have his pay check cashed by the bank officials at the place in question, because it is contended by appellant that it is not shown that he knew anything about

or was familar with such facts. We fail to see any error in this particular and in our view of the case, it would be wholly immaterial whether the defendant knew that the bank had been in the habit of paying checks at, the place in question and in the manner stated or not, if he participated in the holdup at the time in question.

Bills 13, 14, 15, 16 and 17, complain of the admission of the confession of the appellant over his objection and because it is contended that same was not shown to be voluntarily made and because the court refused to permit the appellant to interrogate the interpreter and stenographer who were present at the time said confession was made to the district attorney in the absence of the jury. We have carefully considered these bills and the interpreter, Aldrete, testified that the defendant stated that he desired to make the statement and that he properly translated same to the stenographer in the presence of the district attorney, Vowell, and that said stenographer prepared said statement and then before it was read to the defendant, that said district attorney warned him and it was explained to him that he did not have to sign same and that said statement as read to him showed that whatever he stated could be used against him upon the trial for the offense with which he stood charged and that after same had been read over to him he, defendant. had a couple of changes made and then signed same wherein he confessed to his part of participating in the alleged holdup but denied having a pistol, but contended that he was to cut the wires of the automobile with a knife. We fail to see any error in the admission of this testimony and do not believe that the trial court committed any error in the particular complained of. The witness for the State, Garcia, having testified that appellant admitted being in the holdup to her and would in our opinion render the confession made by the appellant harmless, if there was any error in admitting same by the court which we do not admit. Art. 810, C. C. P., does not require the interpreter to be sworn nor the confession to be sworn to. The interpreter swore that he properly interpreted and translated the statement of the appellant from Spanish into English and we think this was sufficient. It is also contended by the appellant that the court erred in not permitting him to interrogate the State's witnesses relative to said confession in the absence of the jury and forced him thereby to inquire into the statement of the appellant to the effect that he served a term in the penitentiary in Sana Fe. We cannot agree with the appellant in this contention. If the court refused to allow him the privilege to interrogate said witnesses out of the hearing of the jury it was his privilege to take his bill and not take chances on results and of his own volition go into the matters before the jury, and prove himself that the defendant made such statements to the interpreter. The confession introduced in evidence by the State, did not contain any statement to that effect neither did the bill show that said inter-

preter, or said stenographer, or the district attorney refused to inform the appellant's counsel as to what statements the appellant had made concerning the matters inquired about; and when the appellant's counsel went into this matter and developed those facts before the jury it occurs to us that he did so at his own peril, and should not be allowed to complain thereafter.

It is contended in Bill No. 18, that the court erred in permitting the district attorney to interrogate the witness, Aldrete, as to the conversation relative to defendant serving the term in the penitentiary which was brought out by the appellant's counsel at a conversation which is shown to have taken place in jail at another and different time than the time of the confession in question. The court in qualifying this bill states that appellant's counsel had asked the witness, Aldrete, as to statements made by the defendant while in jail and in another and different conversation than the one had in the district attorney's office and he asked the witness Aldrete this question: "you say that at the time this alleged confession was made this man did not tell you about having been in the penitentiary at Santa Fe, that he went up for three years serving twenty-seven months and was deported throug Laredo and had only been in Juarez two or three days when he was arrested. No, sir, not in that office." That this matter having been introduced by the defendant the court believed that the State was entitled to ascertain where Aldrete had obtained such information and moreover the defendant had elicited this answer from Aldrete without objection. The said witness stated, "No, sir, he didn't state that that afternoon, he told me that in the jail when we were there before." With this qualification to the bill showing that the defendant brought out those matters himself, we fail to see any error in permitting the State to then ask the witness where and when and what was said in said conversation and concerning same. Art. 811, C. C. P., states when part of conversation is given in evidence by one party, the whole may be inquired into by the other on the same subject.

In bill No. 19, complaint is made to the assistant district attorney in his argument to the jury in which he stated "what does the defendant say about this", and began to read from the confession made by the defendant. The contention of the appellant is that it was a reference to the failure upon defendant's part to testify. The court in qualifying this bill explains that immediately upon the asking the question as above stated, the said attorney began reading from the confession. We cannot see how this statement as shown by this bill could possibly refer to the failure of the defendant to testify.

Bill of exceptions 20, complains at the argument of the district attorney to the jury in which he used the following language: "If you didn't want all this artillery presented here before the jury, why did you and all these other bandits carry it up there," because it is

contended that it is inflammatory and prejudicial to the rights of the defendant. There is no question from the record but what the defendant and codefendants had pistols on the scene of the homicide and we are unable to see how this kind of an argument was prejudicial to the appellant. In the brief appellant contends that it referred to the attorneys as also being a bandit. We are unable to see how the jury could have been misled by such remarks as there was no evidence tending to show that they, the attorneys for appellants, were connected with this matter in any particular and even though the statement bears that construction, it certainly could not have influenced the verdict of the jury in any way.

Appellant contends, in bill 12, that the court should have peremptorily instructed a verdict of not guilty and that the evidence is insufficient to warrant a conviction. The testimony in this case shows upon the part of the State that the appellant was present, participating in the shooting wherein there were two persons killed and that he confessed to it to the witness, Garcia, and all the facts and circumstances go to show outside of the positive proof and his confession to witness Garcia that he was one of the participants in the attempted robbery, and that he was found wounded immediately thereafter, in the house of one of his alleged conspirator's sister, outside of his own confession to the district attorney admitting his participation in the alleged holdup, was entirely sufficient basis upon which to predicate a verdict of guilty in this case. The defendant failed to testify, and only placed two witnesses upon the stand who testified that he was not in the bandit car at the scene of the homicide and in effect that he was not there, this of course only raised an issue for the jury to pass upon, and for them to decide whether or not they would believe this testimony or that of the State to the contrary, and which the jury, we think, properly decided against the appellant. This court in the companion case of Carrasco v. State, 271 S. W. 155, held that the evidence was sufficient. After a careful examination of all the appellant's bills and of the entire record, we are forced to the conclusion that the record fails to show any error in the trial of this case and that the judgment of the trial court should be affirmed, and it is accordingly so ordered.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant again urges error in the action of the trial court in not putting his case to trial before that of his codefendant, Carrasco. It appears that he and Carrasco had entered

into a written agreement by the terms of which appellant was to be
first tried. The matter seems to have been presented to the court be-
low somewhat in the nature of a request for severance. Information
had been given the trial court of the agreement but also of the fur-
ther fact that appellant had said that he did not care to be tried first.
As we gather from the record, when the application was presented, the
court asked appellant in person if he desired that his case be tried
first, and appellant expressed indifference regarding the matter, but
upon further inquiry told the court to try Carrasco first. Our statute
upon severance seems to require that an affidavit or affidavits be
presented asking that some one or more of the parties jointly indicted
be tried first in order that it may be determined that such person or
persons are not guilty so that their evidence may be used by those who
seek to be put upon trial at a later time. As we understand the case
before us, the request had no such foundation, and was not preferred
by Carrasco, and the complaint is not there made in Carrasco's case.
It was urged in the oral presentation of this case that the attorneys
for appellant believed that Carrasco, the leading spirit in the trans-
action which formed the basis for this prosecution, would be con-
victed capitally and that such fact would in some way affect the trial
of appellant, should he be tried after Carrasco. The contention is
novel but has had our serious consideration and we are not impressed
with the view that same is sound, or that the trial court in anywise
exceeded his discretion in the matter. Arguments that the action of
the court showed want of consideration for counsel might be per-
suasive but not sufficient to justify a reversal of the case.

It is earnestly insisted that we failed to get appellant's view-point
in regard to his bill 13-17 complaining of the trial court's refusal to
withdraw the jury while testimony was being heard on the issue as
to the voluntary character of an alleged confession. Appellant says
that at once upon the offer of said confession by the State, he asked
that the jury be retired while he presented to the court certain mat-
ters intended as an attack upon the voluntary character of the con-
fession. While primarily the trial court decides the competency of
a confession, still if its voluntary character be attacked and brought
in question in the evidence, it then becomes a jury question under
our practice, and the evidence supporting the contention that it is in-
voluntary, as well as that on the other side, should be received in the
jury's presence. We fear that able counsel for appellant are mis-
taken in their application of Bingham v. State, 262 S. W. Rep. 747, or
may have been misled by the syllabus in that case. Said authority,
in so far as applicable here, deals only with the question of whether
the accused was under arrest or not at the time he made a statement,
otherwise admissible. We held under the facts of that case that it was
error for the trial court not to withdraw the jury and allow the accused
to show by proof that in fact he was under arrest at said time. The

rule in reference to cases where the issue is as to the voluntary nature of the confession, is stated in the opinion in that case and a distinction made between it and the rule applicable when the issue is the arrest of the maker of the statement. Judge Hawkins says in the opinion in that case, in discussing the practice when the contention is that the confession is not voluntary:

"If an issue of fact be raised, then to let all the evidence upon the issue go to the jury in order that they may be able to pass upon that question as well as to determine the weight to be given the admission or confession."

We have carefully examined bill of exceptions No. 18, and as far as we understand it we note that appellant drew out of witness Alderete the fact that appellant told said witness that he had been convicted for a felony in the Federal court. The matter being thus elicited by the appellant, he is in no position to complain of the fact that in the State's cross-examination questions were asked relative to the conviction of appellant for a felony. The court's qualification on this bill was accepted without question, and cannot be here attacked for the first time. What we have just said applies to the qualification appended to bill No. 19, which complains that the State's attorney in his argument said: "What does the defendant say about this?", it being here insisted that this referred to appellant's failure to testify. Accepting as true the court's explanation to said bill, to which no exception was addressed, it therefrom appears that said attorney had been commenting to the jury upon the statement of appellant's codefendant, Carrasco, which was in evidence, and that he then used the words above quoted and now complained of, but that after asking the question as to what appellant says about this, said attorney then took in his hand the confession of appellant and said to the jury: "I will read you what he says about it." This manifests no error.

We have given to each contention in this motion, close scrutiny and careful consideration in view of the extreme penalty of the law inflicted upon appellant, but find ourselves unable to agree with same. We feel it but fair to commend the forcible presentation as well as the careful preparation of this case before this court, which evidences that the trial court was justified in his selection and appointment of counsel to defend a man upon a serious charge such as this.

The motion for rehearing will be overruled.

*Overruled.*

### CONCURRING OPINION.

MORROW, PRESIDING JUDGE.—Appellant was charged with a capital offense. The law contemplated that he be represented by counsel; and the court, in obedience to the statute, had appointed counsel. In the opinion of the writer, the appellant was entitled to have the man-

agement of his case left in their hands. The order of trial had, upon an agreement of severance, been fixed with the sanction of the court by an order duly entered. The appellant was an ignorant man, unacquainted with the English language. He was incapable of deciding upon matters of procedure. In acting upon his acquiescence in setting aside the order of trial and in ignoring the protest of his attorneys, in the opinion of the writer, the wright of appellant to representation of counsel which is guaranteed by the Bill of Rights and by statutory enactments was in a degree abridged. See Roe v. State, 25 Texas Crim. App. 66; Patterson v. State, 60 S. W. Rep. 560; Walker v. State, 32 Texas Crim. Rep. 179; McLean v. State, 32 Texas Crim. Rep. 521; Huntley v. State, 34 S. W., Rep. 923; Dougherty v. State, 33 Texas Crim. Rep. 173; Kuehn v. State, 47 Texas Crim. Rep. 637; Spangler v. State, 42 Texas Crim. Rep. 235; Jackson v. State, 55 Tex. Crim. Rep. 79. Inasmuch as no injury is pointed out, and my associates are of the opinion that the record is such as to negative any suggestion of injury, I do not dissent from the result of the appeal. I merely make these remarks so that it may be understood that the procedure adopted is not in accord with my view of the law.