**Tim Don ROBERTS, a/k/a Kevin Dennis Walsh, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 037–89.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 14, 1990.

Michael Allen Peters (on appeal only), Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and J. Harvey Hudson and Luci Davidson, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

CLINTON, Judge.

Appellant was convicted of the offense of burglary of a vehicle, and his punishment, enhanced by two prior felony convictions, was assessed by the jury at thirty years confinement in the Texas Department of Corrections.

In the court of appeals appellant contended, *inter alia,* that the trial court erred in failing to follow the order of trial agreed upon by the three co-defendants upon severance of their prosecutions, in violation of Article 36.10, V.A.C.C.P. In a published opinion, the First Court of Appeals agreed a violation of the statute occurred, but held this error harmless beyond a reasonable doubt under Tex.R.App.Pro., Rule 81(b)(2). *Roberts v. State,* 762 S.W.2d 708 (Tex.App. —Houston [1st] 1988). We granted appellant's petition for discretionary review to address applicability of Rule 81(b)(2) to error committed under Article 36.10, supra. Tex.R.App.Pro., Rule 200(c)(2) & (4).

### I.

Appellant and two others, Chris Mills and Val Berea, were separately indicted for breaking into John Woodby's car on the night of May 22, 1987, with the intent to commit theft. On December 14, 1987, the trial court granted appellant's motion for severance. At this time attorneys for the three defendants presented the trial court with an agreed order of trial, pursuant to Article 36.10, supra. This provision in its entirety reads:

"If a severance is granted, the defendants may agree upon the order in which they are to be tried, but if they fail to agree, the court shall direct the order of the trial."

According to the agreement, Berea was to be tried first, followed by Mills and then appellant. Despite this agreed order of trial, the trial court ruled that appellant should be prosecuted first because he was the only one of the three unable to make bond. In a pretrial hearing conducted on December 16, 1987, appellant expressly informed the trial court he wished to proceed in the agreed order of trial though it meant his continued incarceration pending disposition of the first two causes. The trial court adhered to its earlier ruling, however, and appellant's trial began that day.

Briefly, the evidence at trial showed that on the evening of May 22, 1987, Woodby and friends attended a high school prom at the Wyndham Hotel in Houston. They arrived at the hotel at around 10:15 p.m. and parked in the hotel lot. About fifteen minutes later an off-duty Houston police officer working security for the hotel observed appellant, Mills and Berea standing close to Woodby's car. When the officer heard the sound of breaking glass, he approached the car and noticed the rear passenger window had been shattered and the door was open. Upon the officer's approach, the three defendants walked off, appellant depositing two screwdrivers and a pair of pliers under several nearby cars. The defendants were apprehended and taken to the security office. It was later discovered the radio in Woodby's car had been partially removed.

Berea testified on appellant's behalf. According to his story, the three defendants were on their way "to go out and maybe go see a movie" when they noticed the activity at the Wyndham, and decided to investigate. They parked in a nearby lot and proceeded to the hotel. On the way they discovered the screwdrivers and pliers in a "grassy area" beside the hotel parking lot. Appellant picked these up, and they continued toward the hotel. Just as they arrived next to Woodby's car, the security officer accosted and arrested them. Berea denied any of the three broke into the car. By its verdict it would seem the jury disbelieved him. Neither Mills nor appellant testified.

Finding no cases directly on point, the court of appeals nevertheless acknowledged that the trial court erred in disregarding the agreed order of trial, but held the error was harmless under Rule 81(b)(2), supra. The court of appeals reasoned:

"[A]ppellant has not alleged, either at trial or on appeal, any harm from being tried before his co-defendants. The purpose of an 'order of trial provision' is to allow one defendant to use the testimony of a co-defendant at his trial. The record shows that appellant's co-defendant Val Berea testified on appellant's behalf at length without asserting his right against self-incrimination. There is no indication that appellant attempted to obtain the testimony of co-defendant Chris Mills but was unable to because of the order of trial."

762 S.W.2d at 709–10. In his petition for discretionary review appellant asserts that any assessment of harm flowing from a violation of Article 36.10, supra, is speculative, and that such a violation should not be subject to a harm analysis under Rule 81(b)(2), supra. In its responsive brief, the State contends that Article 36.10, supra, is essentially a moribund provision, an appendage to other statutes long since repealed.

### II.

### A.

"At common law, accomplices in crime were competent witnesses for and against each other." *Myers v. State*, 3 Tex.App. 8, at 11 (1877). Article 230 of the Penal Code of 1857, and later, by identical provision, Article 731 of the 1879 Code of Criminal Procedure as well, changed the common law to the extent they "disallow[ed] as witnesses for one another persons charged as principals, accomplices, or accessaries, whether in the same or by different indictments[.]" *Id.*, at 12. Article 230 read:

"Persons charged as principals, accomplices, or accessaries, whether in the same indictment or by different indictments, cannot be introduced as witnesses for one another; but they may claim a severance, and, if any one or more be acquitted, they may testify in behalf of the others."

Original articles intended to implement the right to sever contained no mechanism for determining order of trial upon the granting of a severance motion. Article 587 of the 1857 Code of Criminal Procedure simply provided: "Where two or more defendants are jointly prosecuted, they may sever on the trial, at the request of either." It appears that under this earliest provision order of trial was at the option of the prosecutor:

"Under the first statute it had grown up into almost a uniform practice that whenever a severance was obtained, notwithstanding it was done upon motion of one defendant for the express purpose of obtaining the testimony of another in his behalf—the practice was uniform, we say, to permit the prosecution, after severance was granted, to elect which defendant should first be tried. This election was recognized as a right belonging to the State, which could not be called in question. *Bybee v. The State*, 36 Texas, 366. The act of 1874 was passed so that the right of election might be exercised by the defendant. The humane purpose and primary object of both laws was to give to one joint defendant, against whom was the burden of proof, the right to have the benefit of the testimony of a co-defendant who had been first tried and acquitted of the crime."

*Boothe v. State*, 4 Tex.App. 202, at 207 (1878). The 1874 amendment to Article 587, alluded to by the Court of Appeals above, created a procedure whereby a defendant could ensure that a co-defendant whose testimony he needed could be tried first upon severance, appending the following language:

"... and if the defendant upon whose application the severance is allowed shall file his affidavit, stating that a severance is requested for the object of obtaining the evidence of one or more persons jointly indicted with him, that such evidence is material for his defense, and that he verily believes that there is no evidence against the person or persons whose evidence is desired, such person or persons shall be first tried."

In the 1879 Code of Criminal Procedure, Article 587 was renumbered as Article 669. Article 670 was added, providing that if a severance is sought, but no affidavit filed

pursuant to Article 669, nee Article 587, then and only then, order of trial shall be at the election of the State.

Construing the 1874 amendment to Article 587, the Court of Appeals limited its application to co-defendants who were also jointly *indicted*, observing:

> "The object of the amendment was to confer upon the defendant a right in joint prosecutions, to which he was not before entitled, of compelling not only a severance, but of selecting the party who should first be tried. But as before stated, this act also applies only to joint prosecutions. We are clearly of opinion, upon mature consideration of the law in all its aspects, that there is and can be under our statutes no such thing as severance except in cases of prosecution by joint indictments. If such a construction should appear to be harsh in cases where, though the indictments are separate, the offence is clearly one and the same transaction, we say the defect in the law or the harshness of the rule is one which addresses itself for change or modification to legislative action, and cannot demand unauthorized judicial legislation to give it a different effect."

*Rucker v. State*, 7 Tex.App. 549, at 558 (1880). In apparent response to the Court of Appeals holding that only co-defendants jointly *indicted* could invoke Article 669, the Legislature in 1883 repealed the 1874 amendment, and rewrote Article 670, so that those provisions would read:

> "Article 669. When two or more defendants are jointly prosecuted, they may sever in the trial upon the request of either.
>
> Article 670. When a severance is claimed, the defendants may agree upon the order in which they are to be tried, but in case of their failure to agree, the court shall direct the order of trial."

Law of Feb. 12, 1883, 18th Leg., ch. 17, § 1, 1883 Tex.Gen.Laws 9, 9 H. Gammel, Laws of Texas 315 (1898). Thus appears for the first time what is now Article 36.10, supra.

It would appear the 1883 amendment was intended to abrogate the holding in *Rucker v. State*, supra, that only co-indict-ees have an absolute right to severance and to dictate the order of trial. If that was not the legislative intent in 1883, manifestly that was the aim of the Legislature when, in 1887, it inserted Article 699a. That provision read:

> "Where two or more defendants are prosecuted for an offense growing out of the same transaction, by separate indictment, either defendant may file his affidavit in writing that one or more parties are indicted for an offense growing out of the same transaction for which he is indicted, and that the evidence of such party or parties is material for the defense of the affiant, and that the affiant verily believes that there is not sufficient evidence against the party or parties whose evidence is desired to secure his or their conviction, such party or parties for whose evidence said affidavit is made shall first be tried; and, in the event that two or more defendants make such affidavit and can not agree as to their order of trial, then the presiding judge shall direct the order in which the defendants shall be tried; provided, that the making of such affidavit does not, without other sufficient cause, operate as a continuance to either party."

Law of March 21, 1887, 20th Leg., ch. 47, § 1, 1887 Tex.Gen.Laws 33, 9 H. Gammel, Laws of Texas 832 (1898). Presumably, then, at least as of 1887, jointly indicted co-defendants could agree to a particular order of trial under authority of Articles 669 and 670; while co-defendants separately indicted could likewise agree to an order of trial, where procedural requisites are met, pursuant to Article 699a. The 1925 Code of Criminal Procedure dropped from then Article 727, formerly Article 699a, the language: "and, in the event that two or more defendants make such affidavit and can not agree as to their order of trial, then the presiding judge shall direct the order in which the defendants shall be tried[.]" Despite that deletion this Court continued to allow co-defendants separately indicted, as well as those indicted jointly, to agree on the order of their trials. E.g., *Odneal v. State*, 117 Tex.Cr.R. 412, 36 S.W.2d 1020 (1931); *Willis v. State*, 141 Tex.Cr.R. 297,

148 S.W.2d 397 (1941). Of course, where upon severance co-defendants fail to agree, whether indicted separately or together, since the 1883 amendment the order of trial has been expressly left to the discretion of the trial court. E.g., *Abbott v. State*, 94 Tex.Cr.R. 31, 250 S.W. 188 (1923); *Alford v. State*, 143 Tex.Cr.R. 57, 157 S.W.2d 391 (1941).

On a number of occasions the Court observed that "the purpose, object, and spirit of the severance statutes is to award the accused, under proper circumstances, the testimony of a codefendant, free and untrammeled as near as possible from any indictment." *Walker v. State*, 138 Tex. Cr.R. 168, 134 S.W.2d 280, at 281 (1939); *McBride v. State*, 121 Tex.Cr.R. 549, 51 S.W.2d 337, at 338 (1932). The State now argues that, after certain changes were made in the 1965 Code of Criminal Procedure, granting co-defendants the right to agree on the order of their trials is no longer necessary to effectuate the "purpose, object, and spirit" of the severance statutes, as identified in previous caselaw. Article 36.10, supra, has become, in the eyes of the State, "an anachronistic relic having no useful function in our modern jurisprudence." Although there is some validity to the State's argument, we hesitate to call the statute dead letter.

### B.

Article 230 of the 1857 Penal Code, the statute rendering accomplices incompetent witnesses for one another, was carried forward both in subsequent penal codes and subsequent codes of criminal procedure. However, that provision, then Article 711 of the 1925 Code of Criminal Procedure, was left out of the 1965 Code of Criminal Procedure, which omission operated as a repealer. See Article 54.02, § 2(a), V.A.C. C.P. Two years later the comparable 1925 Penal Code provision, Article 82, was repealed as well. Acts 1967, 60th Leg., ch. 659, p. 1752, § 40, eff. Aug. 28, 1967. In the interim the United States Supreme Court declared our statutory disability violative of the Sixth Amendment right of the accused to have compulsory process to obtain witnesses in his behalf. *Washington*

*v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). In the absence of any statutory impediment to admission of an indicted co-defendant's testimony, it became no longer necessary to try the co-defendant first in order to render him, upon acquittal, a competent witness. Thus, the State is correct that it is no longer imperative, in order for an accused to obtain material, exculpatory testimony of a co-defendant, that he be able to assure that co-defendant is tried first. Under the present severance statute, Article 36.09, V.A.C. C.P., severance is mandatory only where "it is made known to the court that there is a previous admissible conviction against one defendant or that a joint trial would be prejudicial to any defendant[.]" Clearly Article 36.10, supra, does not serve precisely the same "purpose, object, and spirit" as its predecessors.

Why, then, was this provision not repealed along with Article 711 of the 1925 Code of Criminal Procedure and Article 82 of the 1925 Penal Code? We cannot definitively say. We are unprepared to hold categorically, however, that Article 36.10, supra, is presently of no benefit to an accused. For it may yet function to make available material, exculpatory testimony of a co-defendant which might otherwise prove inaccessible.

It had long been the case under former provisions that:

"Where two defendants are jointly indicted and one is tried and convicted, and subsequently the other is tried and acquitted or the prosecution against him is dismissed, in a proper case a new trial will be granted the former to enable him to obtain the testimony of the latter, where it appears that the new evidence which the law had formerly placed beyond his reach is legal and competent and material to his defense."

2 Branch's Annotated Penal Code, § 762 (2d ed. 1956), and cases cited at 59–60. In *Whitmore v. State*, 570 S.W.2d 889 (Tex. Cr.App.1977) (Opinion on appellant's motion for rehearing), this Court held that the defendant was entitled to a new trial where his co-defendant was unavailable to testify,

not because of the former statutory disability, but because he invoked his Fifth Amendment privilege against self-incrimination. Whitmore's co-defendant was subsequently tried and acquitted. Though Whitmore's motion for new trial was untimely filed, this Court held, on authority of *Washington v. Texas*, supra, that this unavoidable procedural default could not be allowed to defeat the accused's constitutional right to compulsory process.

Subsequent cases have limited availability of a *Whitmore* claim. In *Drew v. State*, 743 S.W.2d 207, at 224–25 (Tex.Cr.App. 1987), for instance, the Court pointed out that at the time *Whitmore* was decided, trial courts retained jurisdiction of a cause until the appellate record was actually filed in this Court. Up to that time the trial court could "for good cause shown" entertain a late filed motion for new trial. Since 1981, however, and under our current Tex. R.App.Pro, Rule 31(a)(1), a motion for new trial must be filed within thirty days of the date sentence is imposed or suspended. At least one court of appeals, taking its prompt from *Drew*, has held that, the accused's right to compulsory process notwithstanding, a trial court has no jurisdiction to entertain a *Whitmore* claim raised in a motion for new trial filed after the thirty day period has expired. *State v. Mapp*, 764 S.W.2d 823 (Tex.App.—Houston [14th] 1989). It would further appear that a *Whitmore* claim is not cognizable in a post-conviction collateral attack pursuant to Article 11.07, V.A.C.C.P. See *Ex parte Binder*, 660 S.W.2d 103 (Tex.Cr.App.1983).

Under current law, then, it seems an accused may avail himself of the right to compulsory process recognized in *Whitmore* to obtain a new trial only in the fortuitous event his co-defendant is acquitted within thirty days of the date his sentence is imposed. *Whitmore* has been rendered largely toothless. However, whether or not the Legislature intended it to, Article 36.10, supra, may provide succor. If an accused believes his co-defendant has material evidence to give on his behalf, but the co-defendant will likely invoke the Fifth Amendment to insulate himself from testifying at his trial, it would certainly behoove the accused to invoke Article 36.10, supra, assuming he can obtain an agreement, to assure that his co-defendant will be tried first, and, as he hopes, acquitted. Under such circumstances we would be constrained to recognize that a violation of the statute deprives the accused of, if not his Sixth Amendment right to compulsory process, at least a legitimate and valuable tool.

Thus we cannot agree, as the State seems to suggest, that violation of Article 36.10, supra, will never work to the disadvantage of the accused. Nevertheless, we do agree that such a violation is subject to an analysis for harm.

### III.

Rule 81(b)(2), supra, provides:

"If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment."

Prior to promulgation of the Rules of Appellate Procedure not every "error in the proceedings below" was deemed subject to a harm analysis. Violation of some procedural provisions, "mandatory" in nature, was held by the Court to justify reversal of the conviction without an inquiry into harmfulness, *vel non*, of the error. A ready example is violation of Article 35.11, V.A.C.C.P., the jury shuffle statute. E.g., *Smith v. State*, 648 S.W.2d 695 (Tex.Cr. App.1983). In cases involving breach of many procedural statutes the record will contain no concrete data from which an appellate court can meaningfully gauge the likelihood that the error did or did not contribute to the conviction or punishment of the accused. This Court has yet to address the broad question whether violation of any statute formerly held "mandatory" will now be subject to Rule 81(b)(2), and we do not today. We do hold that, though its precursors have been designated

"mandatory," violation of Article 36.10, supra, may in some cases prove harmless.

Under predecessors to Article 36.10, supra, given proper application, severance and agreed upon order of trial were matters of right, *Tieman v. State*, 28 Tex.App. 144, 12 S.W. 742 (1889); *Sanchez v. State*, 70 Tex.Cr.R. 24, 156 S.W. 218 (1913); *Ligon v. State*, 82 Tex.Cr.R. 147, 198 S.W. 787 (1917); considered "absolute," *King v. State*, 35 Tex.Cr.R. 472, 34 S.W. 282 (1896); *Willis v. State*, 141 Tex.Cr.R. 297, 148 S.W.2d 397 (1941); "imperative," *Vargas v. State*, 104 Tex.Cr.R. 283, 284 S.W. 564 (1926); *Peddy v. State*, 118 Tex.Cr.R. 603, 40 S.W.2d 153 (1931); and finally, "mandatory," *Estell v. State*, 91 Tex.Cr.R. 481, 240 S.W. 913 (1922). In *King v. State*, supra, the Court observed:

"Being an absolute right, when the statute is complied with by the accused we will not look to the statement of facts, or anywhere else, to determine whether the testimony of [the co-defendant], if he had been acquitted, would have been material to the defendant. This is not required by law."

34 S.W. at 283. Despite this language, the Court has on later occasions indicated that under limited circumstances deprivation of the right to agreed order of trial will not justify reversal of a conviction.

For example, in *Shaw v. State*, 39 Tex. Cr.R. 161, 45 S.W. 597 (1898), the defendant and a co-defendant were separately indicted for murder. Though Shaw and his co-defendant each apparently wanted the other tried first, only Shaw filed his affidavit in compliance with Article 707 of the 1895 Code of Criminal Procedure, formerly Article 669a. This Court conceded the trial court erred in refusing Shaw's requested order of trial:

"Under the statute, *which has been held mandatory* [citations omitted], appellant had the right to insist upon Wilson [his co-defendant] being tried first, he making the proper affidavit for that purpose. It was no response to his motion that Wilson would be placed on the stand as a witness. He had a right to have Wilson tried first, and, if acquitted, he might use him as a witness, unburdened by the pending prosecution against him,—a right for him to testify as any other citizen, free from the particular charge, he being acquitted thereof, and not testify under a cloud, and perhaps believing that, by testifying strongly against the appellant, it would go easier with him in his case. But concede that there was error in overruling the motion to sever, *still, we cannot imagine, under the facts of this case, how a reversal upon that ground should be awarded appellant.* The explanation to the bill shows that Lee Wilson was tried at that term of the court, convicted of murder in the first degree, and sentenced to the penitentiary for life, without any appeal. Now if we should reverse the judgment, it is evident that the appellant could never use Wilson as a witness. * * * We would not be understood as holding that when the statute is complied with, the court has any option in the matter, but it is the court's duty to grant the severance; *but we do hold that, whatever may have been the error of the court below in refusing the severance, a reversal of this case on that account can be of no possible benefit to the appellant, as he can never avail himself of the testimony of his co-defendant.*" [Emphasis supplied.]

45 S.W. at 599. In essence the Court thus held that, because Shaw's co-defendant was ultimately convicted, not acquitted, violation of Shaw's right to agreed order of trial could not be vindicated in a new trial, since by virtue of his conviction the co-defendant would be disqualified as a witness. See also *Alford v. State*, 157 S.W.2d at 393 (Opinion on appellant's motion for rehearing). Though *Shaw* does not embody a harm analysis *per se*, it does reflect an unwillingness to reverse every case that establishes a violation of the former statutory scheme.

More to the point is the Court's opinion in *Rueda v. State*, 101 Tex.Cr.R. 651, 277 S.W. 116 (1926). There Rueda obtained a written agreement with his co-defendant that Rueda should be tried first. When the agreement was presented to the trial court,

the court, apparently by-passing Rueda's counsel, asked Rueda personally whether he preferred to be tried first. Expressing first indifference, Rueda ultimately consented to be tried after his co-defendant. Apparently of the opinion that the sole purpose of an agreed order of trial is to assure that a co-defendant is tried first, so that his testimony may become available in the event of an acquittal, this Court "fail[ed] to see any injury done" by denying Rueda's request that *he* be tried first. 277 S.W. at 118. On rehearing the Court rejected claims the statute might serve an alternative function which was thwarted by the denial of the agreed order of trial:

> "It was urged in the oral presentation of this case that the attorneys for appellant believed that [co-defendant] Carrasco, the leading spirit in the transaction which formed the basis for this prosecution, would be convicted capitally, and that such fact would in some way affect the trial of appellant, should he be tried after Carrasco. The contention is novel, but has had our serious consideration, and we are not impressed with the view that same is sound, or that the trial court in anywise exceeded its discretion in the matter. Arguments that the action of the court showed want of consideration for counsel might be persuasive but not sufficient to justify a reversal of the case."

*Id.*, 277 S.W. at 121. Presiding Judge Morrow concurred, objecting to the majority's dismissal of the claim that in by-passing counsel and obtaining a waiver of his written agreement from Rueda personally, the trial court ignored his right under the Texas Constitution to representation of counsel. This reservation notwithstanding, Judge Morrow continued, "Inasmuch as no injury is pointed out, and my associates are

of the opinion that the record is such as to negative any suggestion of injury, I do not dissent from the result of the appeal."

Thus the Court has indicated that violation of this otherwise "mandatory" statute does not merit reversal where rigorous adherence to the former severance provisions would not in any event have served their intended "purpose, object, and spirit." It is not so great a leap to conclude further that where a record plainly demonstrates that "purpose, object, and spirit" of the statute were accommodated in spite of its breach, error in the proceeding did not contribute to conviction or punishment of the accused. Cf. *Flynn v. State*, 707 S.W.2d 87, at 89 (Tex.Cr.App.1986) (Error in conducting juvenile certification hearing in absence of parent, guardian or guardian ad litem is harmless where "the woman who had raised [Flynn] all his life" did appear, such that "the spirit, if not the letter of the statute [V.T.C.A., Family Code § 51.11(a)] was met[.]").

■ We agree with the court of appeals that on the state of the present record the "purpose, object, and spirit" of Article 36.-10, supra, insofar as we discern it, see Part IIB, *ante*, was not impeded in this cause.[1] Co-defendant Berea did not invoke his Fifth Amendment privilege, but rather testified favorably to appellant at trial. Co-defendant Mills was never called, in all likelihood because, as the record indicates, he was impeachable with prior offenses. We hold that the court of appeals did not err in applying Rule 81(b)(2) to error committed under Article 36.10, supra. Nor do we find fault with that court's particular application of the rule in this case.[2]

■ Having so held, we observe that where co-defendants do not testify at the trial of an accused it should prove rare that

---

1. Appellant contends that in being tried first he lost whatever leverage he might have gained in the plea bargaining process in the event his co-defendants had obtained "light sentences, hung juries, or acquittals[.]" To provide such leverage was never the purpose of predecessors to Article 36.10, supra, however, and we reject any notion that in retaining and recodifying the statute verbatim in 1965 the Legislature intended to grant such a boon.

2. We do note that the court of appeals remarked, "appellant has not alleged, either at trial or on appeal, any harm from being tried before his co-defendants." 762 S.W.2d at 709–710. To the extent this may be read to suggest appellant carries a burden to demonstrate harm attending trial error, it is plainly contrary to Rule 81(b)(2), supra. See text, *post*.

an appellate court can say with the requisite level of confidence that violating an agreed order of trial did not contribute to his conviction. Ordinarily it will be impossible to know from the record whether a co-defendant's testimony would have become available had he been tried first, or whether, if available, it would materially affect a jury's deliberations. Because under Rule 81(b)(2), a conviction must be reversed "unless" the appellate court can determine error is harmless beyond a reasonable doubt, such uncertainty in the record would counsel reversal.

The judgment of the court of appeals is affirmed.

McCORMICK, P.J., concurs in the result.

WHITE, J., concurs in part III and to the judgment of the Court, and dissents to part II B.

TEAGUE and DUNCAN, JJ., dissent.