## C. N. LIVINGSTON V. THE STATE.

### No. 9495.   Delivered November 18, 1925

### Rehearing denied February 24, 1926. ·

#### 1.—Manslaughter—Evidence—Cross-Examination—Held, Proper.

Where, on a trial for manslaughter, counsel for appellant on his cross-examination of the father of deceased, brought out a part of a conversation of deceased and witness, there was no error on redirect examination by the state in permitting all of said conversation and witness' explanation of same to be proven.   See Art. 811 Vernon's C. C. P.   Following Barber v. State, 69 S. W. 516 and other cases cited.

#### 3.—Same—Evidence—Improperly Admitted.

On a trial for manslaughter there was no error in excluding testimony of a statement of a vulgar and lascivious character, made by the deceased and spoken of women generally. It was not claimed to have had reference to the alleged seduced female, nor known to appellant. It is well settled in this state that this method of procedure is improper where the matter under inquiry is unknown to appellant, and where it has no relation to the matters in controversy on the trial.

#### 3.—Same—Evidence—Improperly Admitted.

Where, on a trial for manslaughter appellant relying upon the defense that the killing was the result of the seduction of his daughter by the deceased, there was no error in permitting the state to prove by a physician that prior to the date of the alleged seduction he had treated said female for a venereal disease, and had informed appellant, the father of the female, of that fact.

##### ON REHEARING.

#### 4.—Same—Evidence—Part of Conversation Proven—Entire Conversation Admissible.

Appellant complains on rehearing of our holding in our original opinion on the admissibility of the testimony of the witness Davis (father of deceased) as to statements made by witness to named parties. This matter was first brought out by appellant and having gone into the conversation, we see no impropriety in permitting the state to inquire into the same subject and elicit from the witness what the conversation really was. See Art. 728 C. C. P. 1925, authorities collated in notes under old Art. 811 Vernon's C. C. P. also Branch's Ann. P. C., Sec. 91.

Appeal from the Criminal District Court of Tarrant County. Tried below before the Hon. Geo. E. Hosey, Judge.

Appeal from a conviction of manslaughter, penalty two years in the penitentiary.

The opinion states the case.

*McLean, Scott & Sayers* of Fort Worth, for appellant.

*Sam D. Stinson,* State's Attorney and *Nat Gentry, Jr.,* Assistant State's Attorney; *R. K. Hanger,* District Attorney, Tarrant County, and *Phillips, Brown & Morris,* attorneys for the State.

BERRY, JUDGE.—The appellant was convicted in the District Court of Tarrant County for the offense of manslaughter and his punishment assessed at two years in the penitentiary.

It seems from the record, that the appellant claimed to have killed the deceased because of the fact that he believed that deceased had seduced his daughter. The evidence fails to raise the issue of self-defense and there was no charge on this issue and no contention on appellant's part that such charge should have been given.

There are but three questions presented for the consideration of this court by the record. Appellant's first contention is that the court erred in permitting the state to prove by the witness L. K. Davis, the father of deceased, a conversation between said witness and deceased concerning deceased's connection with the daughter of the appellant, it being shown that said conversation was out of the presence and hearing of the appellant and that he had no knowledge thereof. This testimony was in our opinion admissible. The record discloses that the matter was gone into originally by the appellant himself, His counsel asked the witness Davis on cross-examination if while he was on the Federal grand jury with Mr. House and Mr. Bryson and at a time subsequent to the homicide if he did not make a certain statement to them. In order that the matter may be accurately set out, we quote from the record as follows:

"Question. Didn't you tell these two named gentlemen that your boy, Alfred, came to you and told you he was in some trouble and told you what it was and you said to him, 'son (meaning the deceased) I thought I tried to teach you to treat the other fellow's sister like you wanted them to treat your sister, you had better leave'?"

"Answer. (By witness Davis) No, sir; I didn't tell it exactly that way."

Appellant's counsel then asked him the following question:

"Question. Didn't you further state to Mr. Bryson upon that occasion that when the officers came to arrest your son Alfred on the seduction charge you stated to the officers that the boy (Alfred) was out, that they couldn't find him, that he had run off, but that you would bring him in?"

"Answer. (By witness Davis) I didn't make it that way, I do not know Mr. Bryson."

The matter was left in this condition until the state on re-direct examination asked Mr. Davis the following question:

"Question. What did you tell him? (meaning, what did you tell Otis House and Mr. Bryson, and after the homicide, in the Federal building)".

"I told Mr. House, after he found out I was the father of the boy that was killed, that about ten days prior to the killing my boy came to me and says, 'Papa, Jack is in trouble'—that is my other boy— and I said, 'what is it, son' and he said, 'Lloyd Tillery is threatening to kill him'. I said, 'Is that a fact', and he says, 'yes, sir'!"

"I told Mr. House that ten days prior to the killing my son, Alfred came to me and said, 'Papa, I am in trouble', and I says, 'what is it, son', and I said, 'son, you know what I have always told you, I have always told you to treat the other boy's sister like your own' and he says, 'Papa, I have done it and can prove that', and I says, 'if you can, I will stay with you, but if you can't I would advise you not to stay here' and he had proved it".

From the foregoing statement it seems clear to us that the questions asked by the state in re-direct examination of this witness were clearly admissible under Art. 811, Vernon's C. C. P. We think that the foregoing questions and answers show beyond controversy that the witness was simply permitted to explain exactly what he had said in the conversation inquired into by the state. Barber v. State, 69 S. W. 516, and cases there cited. Streight v. State, 62 Tex. Crim. Rep. 464; Ball v. State, 36 S. W. 448; Wharton's Crim. Evidence, 10th Ed. Vol. 1, page 1000.

Appellant's second complaint is that the court erred in failing to permit the appellant to prove certain vulgar and lascivious statements made by the deceased with reference to his conduct with girls and women generally. This testimony was of-

fered through the witness Lassiter and the record discloses that deceased did not mention appellant's daughter but only spoke of women generally. It also affirmatively shows that the witness Lassiter did not tell appellant anything about this conversation and there is no contention that appellant knew anything about it. We think this testimony was properly excluded. It could have done nothing more than to have placed the deceased in a bad light before the jury and it is well settled in this state that this method of procedure is improper where the matter under inquiry is unknown to the appellant and where it has no relation to the matters in controversy on the trial where such testimony is offered.

Appellant's third complaint is that the court erred in permitting a certain physician to testify that in August, 1922, a date prior to that on which it is contended the deceased seduced appellant's daughter, the said daughter was treated by said physician for gonorrhea. In the absence of knowledge of this fact on the part of the appellant it would be necessary to decide whether the testimony would have been admissible but in addition to the foregoing testimony this same physician also stated that the appellant had talked to him before the killing about the disease for which his daughter was being treated and while the physician testified that he told the appellant that he did not know that said daughter had such disease, yet the conversation disclosed by the bill of exceptions is entirely sufficient to show that the physician made statements at that time to the appellant that were entirely sufficient to charge him with notice that his daughter was being treated for a venereal disease. In other words, we think it clear from this record that the bill of exceptions complaining of this matter shows on its face that the appellant was in possession of sufficient facts to warrant the statement that he knew at the time that the deceased was killed and prior to the time that he claims that the deceased seduced his daughter that this physician had made statements to him from which he must have reasonably inferred that his daughter had been treated for a venereal disease. This being true, we hold that no reversible error is shown in regard to the matter.

From what has been said above, it follows that in our opinion the judgment of the trial court should be in all things affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—In his motion appellant urges that we were in error in the disposition made of the question raised by his first bill of exception. It appears that appellant asked the witness Davis (father of deceased) if he had not made certain statements to named parties at a designated time and place. Witness did not deny making the statement in toto, but claimed not to have made it in the way intimated by the question. Thus the jury could have assumed that the statement was substantially that attributed to him by the questions. Appellant seemed content to let it rest in this condition. Appellant having gone into the conversation we see no impropriety in permitting the state to inquire into the same subject and elicit from the witness what the conversation really was. The procedure followed is sanctioned by Article 728, C. C. P. (1925 Revision) being Art. 811 Vernon's C. C. P. of 1916. Many authorities will be found collated in the notes under old Article 811 in Vernon's C. C. P. and under Section 91, Branch's Ann. Texas P. C. We think the facts elicited do not bring this case under any of the exceptions recognized.

The motion for rehearing is overruled.

*Overruled.*