## JOHN RINGER AND B. C. RINGER V. THE STATE.

No. 20971. Delivered April 3, 1940.
Rehearing Denied May 15, 1940.

The opinion states the case.

Glenn Capps, of Mason, for appellant.

O. C. Fisher, District Attorney, and H. C. Upton, both of San Angelo, and Lloyd W. Davidson, State's Attorney, of Austin, for the State.

GRAVES, Judge.

Appellants were convicted of receiving and concealing certain sheep, knowing the same to have been stolen, and were by the jury assessed a penalty of three years each in the penitentiary.

The facts show that in December, 1936, in Irion County, Tom Ault lost 43 head of sheep in the nighttime, taken without his consent. That soon thereafter all these sheep were found in the possession of appellants. The ear marks were not changed, but the brands thereon, which were a black dot on the hip, had been hidden under a red block brand, and by a close scrutiny the original brand could be detected underneath the red block.

Trammel Wilson testified that he and one Frank Barfield, a cousin of appellants, had stolen these sheep from Mr. Ault, and had later taken these sheep to the farm of one Davis. At such time there was no red block brand on them. Mr. Davis testified that sometime during November he leased some land planted in oats to appellants for grazing purposes; that sometime in the latter part of December, 1936, John Ringer phoned him at night that he was sending some sheep down to the Davis farm to be unloaded, and soon thereafter two boys came up with some sheep and unloaded same. Early the next morning about daylight John Ringer came to the Davis home, and he and two others turned these sheep out of the Davis farm and drove them to another nearby farm, that of Standley's, which the appellants had also leased. These sheep at that time did not have a red block brand on them. When they arrived at the Standley farm these sheep were turned into a flock of about 1400 sheep. On the next day appellants and two others ran these sheep into a corral and branded many of them with a red block brand, this brand being placed over any other brand previously on such sheep. It is further shown that the red block brand in each instance testified about was placed

over a previously existing brand, provided such other brand was present. Out of this flock of sheep Mr. Ault and his neighbor, Mr. Mayer, identified and recovered all of his 43 stolen sheep from the Ringers' flock.

But one bill of exceptions is urged for our consideration, and that is bill No. 1. When questioning Trammel Wilson, one of the self-confessed takers of the sheep, the following is shown by such bill:

"Q. As a matter of fact, you didn't even know the defendants upon the occasion you testified, did you Trammel? A. Well, I knew them when I saw them.

"Q. You knew them by sight? A. Yes, sir.

"Q. When someone else pointed them out to you and told you who they were? A. Yes, sir.

"Q. State whether or not, Trammel, it is not a fact that Frank Barfield at all times cautioned you not to ever let the defendants have a suspicion that there was anything wrong with the sheep, or that the sheep were being stolen, because if they knew about it they would not buy any more sheep; did he do that or not? A. Yes, he cautioned me to that effect several times.

### RE-DIRECT EXAMINATION
### (By Mr. Fisher)

"Q. I will ask you to state in connection with that whether he ever made any statement to you as to what B. C. had told him about fire branded sheep? A. Frank told me not to bring any more hot sheep; that is right.

"Q. And he told you that B. C. told him he didn't want any more fire branded sheep? A. Yes, sir.

"Q. Is that correct? A. Yes, sir.

"Q. Why did he tell you B. C. didn't want any fire branded sheep? A. He didn't say because of it.

"Q. Did he say anything to the effect that it was too hard to obliterate the brand and hide the brand? Is that right? A. Yes, sir.

"MR. CAPPS: I asked him whether of not Frank Barfield cautioned him, and this testimony with reference to this conversation he had with the witness is purely hearsay and cannot be admitted for any purpose. It is not shown the defendants were present and is not binding on defendants and is purely hearsay or declarations of one who is supposed to be the purported thief and is inadmissible against the defendants who, I understand, are charged with receiving and concealing.

"MR. FISHER: He introduced part of the conversation and we want to introduce the rest with reference to what he said and how he knew about it.

"MR. CAPPS: I didn't ask him to state any conversation; I believe I asked him did he warn him or what Barfield did, but not with reference to any conversation he had between him and Barfield.

"THE COURT: For the present I overrule the objection.

"MR. CAPPS: Note our exception."

This bill is defective in that it is not therein affirmatively shown that the above quoted conversation took place outside of the presence of the appellant B. C. Ringer.

It is said in 4 Tex. Jur., p. 339, Sec. 230: "A bill of exception complaining of the admission of testimony as to transactions or conversations, over the objection that they occurred in the absence or out of the presence and hearing of the accused, must show as a fact that they occurred out of his presence and hearing; it is not enough to state merely as a ground of objection that such was the case."

It will be noted that there are many cited cases thereunder supporting the text.

If any portion of such testimony was objectionable, it could only be the last question shown in the bill to the effect that "Did *he* say anything to the effect that it was too hard to obliterate the brand and hide the brand? Is that right? A. Yes, sir." From a careful reading of the bill the pronoun "he" seems to refer to the conversation between Frank Barfield and Wilson, and the "he" referred to what Barfield said about the difficulty of eliminating a brand made by fire, and was not a reference to what B. C. Ringer may have told Barfield. It was a conversation between the two original takers of these sheep, and did not purport to say what B. C. Ringer told Barfield.

It is also our opinion that because of the fact that appellants first introduced the subject of a conversation between the two original takers, that the State had the right under Art. 728, C. C. P., to introduce the remaining portion of such conversation relative thereto.

We held in Florence v. State, 4 S. W. (2d) 555, that where the appellant had introduced, without objection upon the part of the State, a statement made by an accused while under arrest, but not after a proper warning, that Art. 728, C. C. P.,

correctly authorized the remaining portion of such statement to be introduced. That opinion cites Venn v. State, 105 Tex. Cr. R. 19, 284 S. W. 955; Livingston v. State, 103 Tex. Cr. R. 372, 280 S. W. 802; Rueda v. State, 101 Tex. Cr. R. 651, 277 S. W. 117. It will also be noticed that while on his direct examination appellant denied having had any such conversation with Barfield.

We see no error reflected in the record. The judgment is therefore affirmed.

## ON APPELLANT'S MOTION FOR REHEARING.

CHRISTIAN, Judge.

An examination of the record in the light of appellants' motion for rehearing leaves us of opinion that proper disposition of the appeal was made upon the original submission.

The motion for rehearing is overruled.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.